Ross C. Anderson (#0109)
Janet M. Conway (#7488)
**LEWIS HANSEN**
The Judge Building
Eight East Broadway, Suite 410
Salt Lake City, Utah 84111
Telephone: (801) 746-6300
Fax: (801) 746-6301
randerson@lewishansen.com
jconway@lewishansen.com

*Attorneys for Plaintiff*

---

### IN THE THIRD JUDICIAL DISTRICT COURT

### IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JANET CRANE, as Administrator of the Estate of BROCK TUCKER, <br><br>        Plaintiff, <br><br> vs. <br><br> UTAH DEPARTMENT OF CORRECTIONS, ALFRED BIGELOW, RICHARD GARDEN, DON TAYLOR, OFFICER COX, BRENT PLATT, JOHN DeWITT, FUTURES THROUGH CHOICES, INC., UNIVERSAL HEALTH SERVICES, INC., and JEREMY COTTLE, <br><br>        Defendants. | **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS** <br><br> **JURY TRIAL DEMANDED** <br> **Tier 3** <br><br> **Civil No. _____** <br><br> **Judge _____** |

## I. INTRODUCTION

1.      Brock Tucker ("Brock") lived a tragic life.  From the day he was born, Brock was a victim of neglect, physical abuse, psychological abuse, and, ultimately, torture, leading Brock to commit suicide to escape his continuing tragedy.  When Brock was only two years old, he had a near fatal drowning accident that left him with brain damage and an IQ of 70. Due to his medical condition, Brock had mental health problems, including a lack of behavior impulse control and the ability to withstand or avoid negative outside influences.  When Brock was thirteen years old, he was moved to a gang-infested neighborhood and became a juvenile delinquent after being physically coerced into the gang.  The people in charge of Utah's Division of Child and Family Services and Utah's Juvenile Justice Services, as well as the specific individuals charged to help Brock, not only failed to provide minimum medical care, they failed to protect Brock from suffering severe physical and psychological abuse at the hands of staff members at multiple juvenile facilities.  At the age of seventeen, Brock was sent to the ultimate place of abuse, the Central Utah Correctional Facility. After two years of being subjected to repeated periods of torturous solitary confinement, including more than 154 days of the last year of Brock's life, and the prison warden and staffs' deliberate indifference to Brock's serious and well-documented brain damage and mental illness, Brock succumbed to the nightmare. Brock committed suicide on October 2, 2014, by hanging himself from his upper bunk, in solitary confinement at the

Estate of Brock Tucker v. Utah Department of Corrections, et al.<br>Complaint – Page 2

Central Utah Correctional Facility, only two months before he was hoping to be paroled.  Brock was nineteen years old.

## II. JURISDICTION AND VENUE

2.      Plaintiff Janet Crane, Brock's grandmother and Administrator of the Estate of Brock Tucker ("Crane"), hereby asserts claims pursuant to 42 U.S.C. §§ 1983, the Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of the Utah Constitution.

3.      This action seeks redress for violations of Brock's constitutional rights.  This Court has jurisdiction to adjudicate these claims pursuant to U.C.A. § 78A-5-102(1).

4.      This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

5.      Venue is proper in Salt Lake County, Utah pursuant to U.C.A. § 78B-3-307(b), which allows a suit to be brought where any Defendant resides at the commencement of the action. Venue is also proper in Salt Lake County against the Utah State Defendants pursuant to U.C.A. § 63-7-502(1).

## III.  PARTIES

6.      Plaintiff Janet Crane is the Administrator of the Estate of Brock Tucker.  Crane is a resident of Summit County, Utah.

7.      Defendant Utah Department of Corrections, at all relevant times, was responsible for the creation and oversight of policies, practices, and customs regarding the mental health treatment

of inmates, as well as the disciplinary process and use of solitary confinement at CUCF.  The Utah Department of Corrections also responsible for administering, supervising and training employees and contractors who attended to inmates with medical and mental health problems.

8.      Defendant Alfred Bigelow ("Bigelow") is the Warden of the Central Utah Correctional Facility ("CUCF") located in Gunnison, Utah. He served in that position from approximately 2007 to July, 2010, then again from April, 2014 until the present.   At all relevant times, Defendant Bigelow was responsible for the hiring and training of staff, and for the creation and oversight of policies, practices and customs regarding the mental health treatment of inmates, the disciplinary process, and the use of solitary confinement at CUCF during the period of time Brock was incarcerated at that facility.   CUCF subjected inmates, including Brock, to extremely disproportionate punishment and repeated use of solitary confinement, depriving them of human dignity and their sanity, and inflicting upon them unnecessary and extreme emotional distress, depression, anxiety, and crushing loneliness. CUCF failed to adequately treat its mentally ill inmates, including Brock, and failed to recognize suicide risk and properly train officers to prevent suicide.   Between the years 2000 and 2013, Utah ranked number one nationally in suicide mortality rate among state and federal prisoners.  Its suicide rate increased more than 53% from 2012 to 2013, when it reached an all-time high since at least 2000, the year that the U.S. Bureau of Justice Statistics began collecting and maintaining data on prison suicides. Bigelow is being sued in his individual capacity.

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 4

9.     Defendant Richard Garden ("Garden"), at all relevant times, was the Director of the Clinical Services Bureau for the Utah Department of Corrections. As the Director, along with Defendant Bigelow, Garden was responsible for the oversight and control over the policies and procedures for medical and mental health treatment at CUCF. Garden had the responsibility to manage, oversee, create policy for, and administer such policies and procedures at CUCF, relating to treating mentally ill inmates, including Brock. Garden was also responsible for hiring, administering, supervising and training employees and contractors who attended to inmates with medical and mental health problems. Garden is being sued in his individual capacity.

10.    Defendant Don Taylor ("Taylor"), at all relevant times, was an inmate disciplinary officer at CUCF.  Defendant Taylor was responsible for disciplining and sentencing Brock to two consecutive 20 day periods of punitive isolation during September and October of 2014, leading to Brock's death, without going through the process of referring the disciplinary matters to Brock's mental health care provider to determine if the charged offenses were a result of his mental illness or if disciplinary action would adversely affect his mental health treatment program, as required under the Department of Corrections policy. Taylor is being sued in his individual capacity.

11.    Defendant Officer Cox (first name presently unknown to Plaintiff) ("Cox"), at all relevant times, was a correctional officer at CUCF. On information and belief, Defendant Cox was employed as a guard at CUCF on October 2, 2014, and had an altercation with Brock,

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 5

leading to Brock's death within a short period of time. Cox is being sued in his individual capacity.

12.     Defendant Brent Platt ("Platt"), at all relevant times, was the Director of Utah's Division of Child and Family Services, ("DCFS"), who failed to provide proper mental health treatment to Brock and further failed to protect Brock from being subjected to inhumane conditions rising to the level of cruel and unusual punishment and unnecessarily rigorous treatment in juvenile detention facilities as well as from being physically attacked by staff members at DCFS-contracted juvenile treatment facilities, Future Through Choices and Provo Canyon School. DCFS and the treatment facilities it contracts with failed to provide adequate mental health treatment to the juveniles it is charged with protecting and helping, including Brock, resulting in these untreated individuals winding up in Utah Correctional Facilities as adults. Even worse, Platt and DCFS knew there are documented instances of physical abuse by staff members at its facilities and made no effort to help or protect the victims of abuse, including Brock.  Platt is being sued in his individual capacity.

13.     Defendant John DeWitt ("DeWitt"), at all relevant times, was the Director of Juvenile Justice Services, who failed to provide adequate mental health treatment to Brock and further failed to protect Brock from being subjected to inhumane conditions rising to the level of cruel and unusual punishment and unnecessarily rigorous treatment at the Salt Lake Valley Detention Center.  DeWitt is being sued in his individual capacity.

14.     Defendant Futures Through Choices ("FTC"), is a private 501(c)(3) corporation, located in Bountiful, Utah.  At all relevant times, FTC was operating under contract with DCFS, received juveniles via in-custody detention, and was acting under color of law. At all relevant times, FTC employed the staff member(s) who physically assaulted Brock while Brock was involuntarily confined at its facility in 2008.

15.     Defendant Universal Health Services, Inc., ("UHS") is a private for-profit corporation, headquartered in King of Prussia, Pennsylvania, and operates a boys' residential treatment facility in Provo, Utah, known as "Provo Canyon School."  At all relevant times, UHS was operating under contract with DCFS, received juveniles via in-custody detention, and was acting under color of law. At all relevant times, UHS employed the staff members who physically assaulted Brock while Brock was involuntarily confined at Provo Canyon School.

16.     Defendant Jeremy Cottle ("Cottle"), at all relevant times, was the CEO and Managing Director of Provo Canyon School, who failed to provide adequate mental health treatment to Brock, failed to provide reasonably safe conditions of confinement, failed to adequately train and supervise the staff, and further failed to protect Brock from being subjected to inhumane conditions as well as from being physically attacked by staff members

## IV.  FACTUAL ALLEGATIONS

17.     Brock was born in Missouri on November 12, 1994, to Trent and Piper Tucker.  He was the youngest of three children.

18.     Brock was a very small child, and he was only 5'6" and 142 pounds when he died.  He was a thoughtful and artistic boy with an incredibly strong sense of family, deeply loved by his family members, including his grandmother, Crane, and his two siblings.

19.     From the time Brock was born, Brock's parents were heavy drug abusers and had a volatile relationship.

20.     Shortly after Brock was born, his parents separated and his father returned to his home state of Utah.  Brock and his siblings remained in Missouri with Brock's mother.

21.     In 1996, when Brock was two years old, he suffered from a near fatal drowning accident that left him with a traumatic brain injury and an IQ of 70.

22.     In 1997, the Missouri Department of Social Services planned to remove Brock from his mother's custody due to the abuse and neglect stemming from his mother's drug addiction, unless his mother agreed to let Crane take custody of Brock, which she did.

23.     Crane, who lived in Colorado at that time, drove to Missouri to pick Brock up and returned to Colorado.  Crane allowed her son, who was Brock's father, Trent Tucker ("Trent"), to pick Brock up the next day and take him to Utah so that he could raise Brock.

24.     In 1999, Utah DCFS instituted proceedings to remove Brock from his father's custody. Crane then worked with Utah DCFS and, in June 2000, was awarded permanent custody and guardianship of Brock. Crane returned to Colorado with Brock.

25.     In 2001, Crane moved to South Salt Lake City, Utah, with Brock.

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 8

26.     Brock's life stabilized for a few years while living with Crane in South Salt Lake City. Brock did well in school and was an avid skateboarder and snowboarder.

27.     In 2006 (when Brock was 11 years old), Brock began having behavioral issues, so Crane took Brock to see Dr. David E. Nilsson, who was board certified in Clinical Neuropsychology and specialized in treating neurodevelopmental and neurobehavioral disorders resulting from brain injuries. Dr. Nilsson performed extensive testing and diagnosed Brock with brain damage, a 70 IQ, and an impulse control disorder. According to Dr. Nilsson, Brock's impulse control disorder caused him to be unduly impressionable and overly influenced by his surroundings and other people.

28.     In 2007, Crane moved to a gang-infested neighborhood, and shortly thereafter, despite wanting nothing to do with gangs, a local gang physically coerced Brock to join the gang. Brock started having troubles with the law for non-violent offenses, including stealing automobiles.

29.     On March 7, 2008, DCFS was awarded custody of Brock.  While pending placement in a mental health treatment facility, Brock was placed in Salt Lake Valley Detention Center (the "detention center"), which is run by Utah's Juvenile Justice Services. DCFS failed to find placement in a treatment facility for Brock for two months and left Brock in the detention center until May 15, 2008. During his stay in detention, Brock spent most of his time under "lock down," which included periods with no mattress, no sheets, no recreation of any kind, no church, no books, no pencil, and no paper.  Brock's mental condition deteriorated substantially, and he

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 9

engaged in self-mutilation and became suicidal.

30.    On May 15, 2008, at the direction of DCFS, Brock was picked up from the detention center by a representative from Futures Through Choices, where he was held for no more than 48 hours before he was physically assaulted by a staff member, leaving marks and bruising across his body, beginning at his biceps and across his chest. One of the staff members repeatedly lifted Brock up and squeezed him until he could not breathe, then released Brock long enough to catch his breath. That same staff member also twisted Brock's arm behind his back, grabbed him by the hair, pushed him into the bathroom in front of the mirror, and told Brock that he was going to make him "cry like a bitch." After DCFS failed to protect Brock from harm following his assault by the staff member, Brock ran away from the facility.

31.    The assault by the FTC's staff member was substantiated by the State of Utah's Office of Child Protection Ombudsman.

32.    Dr. Nilsson thereafter advised the Court by letters and personal appearances that Brock had brain damage and should be treated in consultation with a neuropsychologist, and that any facility that employed a traditional punishment/reward system alone, without adjusting it to Brock's medical needs, could not help Brock and would actually make things worse for him.

33.    As a result, DCFS sent Brock to a six-week evaluation program at ARTEC South, where he continued to engage in self-mutilation. At the conclusion of the program, Dr. Sumudra, DCFS's Observation and Evaluation psychiatrist, stated that she was not qualified to treat Brock

due to his brain damage. Dr. Sumudra stated that Brock should only be treated by a neuropsychologist and recommended Dr. Nilsson.

34.     DCFS was court-ordered to work with Dr. Nilsson, but DCFS refused to do so, instead sending Brock to Cinnamon Hills, a facility in St. George that did not provide the neurofeedback program that Dr. Nilsson believed Brock needed, and further was located hundreds of miles away from Brock's family and Dr. Nilsson, preventing Dr. Nilsson from personally treating Brock. It was almost a year before Brock was transferred to a facility that could purportedly provide needed mental health treatment.

35.     In approximately May 2009, Brock was sent to Provo Canyon School, operated by Defendant UHS, since that facility offered a neurofeedback program. During the three months Brock was at Provo Canyon School, he was beaten by staff multiple times, and on one occasion Brock had his head beaten into concrete by a staff member until Brock was rendered unconscious.

36.     At least two separate instances of physical abuse by Provo Canyon School staff were substantiated by the State of Utah's Office of Child Protection Ombudsman, but DCFS failed to take action to protect Brock and he was assaulted on multiple occasions by the Provo Canyon School staff members.

37.     In June 2009, due to DCFS's failure to take any action to remove Brock from Provo Canyon School or otherwise protect him, Brock attempted suicide.

38.     Despite the abuses being substantiated and Brock attempting suicide, it took DCFS another two months to remove him from Provo Canyon School.  DCFS sent Brock back to Cinnamon Hills, which was still unable to treat Brock's mental illnesses and further made it impossible for Dr. Nilsson to treat Brock.

39.     By 2011, Brock was fully beaten down from repeated mental and physical abuse at the hands of those charged with protecting and helping him, so he immersed himself in gang activity for a period of time.  Brock was inside juvenile facilities more than he was outside. In late 2011, he was arrested and sent to Slate Detention Center from approximately December, 2011 to March 2012.

40.     In March 2012, Brock was charged with auto theft and related charges and was tried as an adult. Dr. Nilsson and Crane fought to prevent Brock from going to prison, firmly believing prison would destroy Brock.

41.     In August 2012, Brock was ultimately sentenced to imprisonment at the Utah State Prison with a two to five year sentence, with possibility of parole on December 1, 2014.

42.     On September 5, 2012, Brock entered prison when he was only seventeen years old and was a mere 5' 6", 140 lbs.  Brock was initially sent to the Utah State Prison located in Draper, but was transferred to CUCF in Gunnison,Utah, within a few months.

43.     Shortly after Brock was transferred to CUCF, Brock was disciplined by Inmate Disciplinary Hearing Officers, including Marc Puckett and Don Taylor, for minor, nonviolent

infractions. In February 2013, Brock was sentenced to punitive isolation, during which he was completely alone in a cell; only permitted out of his cell, at most, one hour every other day, which was the only opportunity to take a shower; denied access to recreation, exercise equipment, and the library; denied any visitation; denied any phone calls; and denied commissary, which prevented him from being able to purchase materials needed to send letters to family and friends. Brock thereafter spent in excess of 154 days in punitive isolation over the next year, which is recognized to be torture and known to cause insanity, and to cause emotional distress, depression, and crushing loneliness.

44.     In February 2013, Brock was disciplined and sentenced to punitive isolation. Brock was in isolation on March 2, 2013, when he was sentenced to an additional 14 days of punitive isolation for the period of March 5, 2013 to March 19, 2013, for wandering out of bounds while in solitary confinement.

45.     One week after being released from punitive isolation, on March 26, 2013, Brock was sentenced to 30 days of punitive isolation and placed back in isolation for the period of April 1, 2013 to May 1, 2013, for misusing medication and being intoxicated.

46.     On the same date, March 26, 2013, Brock was sentenced to an additional 20 days of punitive isolation and placed in isolation for the period of May 6, 2013 to May 26, 2013, for refusing a direct order and falsely stating he was allowed to take breaks from his cell while he was in punitive isolation.

47.    While in isolation on April 24, 2013, Brock was sentenced to 30 days of punitive isolation and placed in isolation for the period of May 28, 2013 to June 27, 2013, for previously refusing to change housing assignments because the new cellmate was a sex offender.

48.    Three weeks after finally getting out of solitary confinement, on July 18, 2013, Brock was sentenced to 20 days of punitive isolation and placed in isolation for the period of July 22, 2013, to August 11, 2013, for misusing medication and giving himself a tattoo.

49.    Between March 2, 2013 and August 11, 2013, Brock was in punitive isolation for a total of at least 115 days out of 160 days.

50.    Only two months went by before Brock returned to solitary confinement.  On October 22, 2013, Brock was sentenced to 20 days of punitive isolation and placed in isolation for the period of October 28, 2013, to November 17, 2013, for misusing medication.

51.    Six weeks later, on December 30, 2013, Brock was sentenced to 20 days of punitive isolation and placed in isolation for the period of January 6, 2014, to January 26, 2014, for giving himself a tattoo.

52.    On June 9, 2014, CUCF changed Brock's inmate classification code from level three to level two security, which meant he was placed in maximum security housing and confined to a cell for 21 hours per day, with reduced visitation time and reduced privileges.

53.    At or about the same time, in June, 2014, Brock was seen by Dr. Bruce Burnham for medical and mental illnesses, and was diagnosed with unspecified psychosis and major

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 14

depressive disorder, along with moderate back pain and hepatitis C.

54.     Unspecified psychosis is defined as a loss of contact with reality, a thought disorder, or a change of personality or behavior often associated with delusions, illusions, or hallucinations.

55.     According to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-5)*, in order to receive a diagnosis of major depressive disorder, a person must experience five or more symptoms below for a continuous period of at least two weeks.

- Feelings of sadness, hopelessness, depressed mood
- Loss of interest or pleasure in activities that used to be enjoyable
- Change in weight or appetite (either increase or decrease)
- Change in activity: psychomotor agitation (being more active than usual) or psychomotor retardation (being less active than usual)
- Insomnia (difficulty sleeping) or sleeping too much
- Feeling tired or not having any energy
- Feelings of guilt or worthlessness
- Difficulties concentrating and paying attention
- Thoughts of death or suicide.

For a diagnosis of major depressive disorder, most qualifying symptoms must be present every day or nearly every day and must cause significant distress or problems in daily life functioning.

56.     On June 19, 2014, Brock was prescribed fluoxetine, otherwise known as Prozac, which is an anti-depressant and anti-anxiety medication, and mirtazapine, otherwise known as Remeron, which is an anti-depressant specifically used to treat major depressive disorder.

57.     On July 2, 2014, Dr. Bruce Burnham ordered Brock to outpatient mental health

treatment.

58.     On July 16, 2014, Brock was further prescribed sertraline, otherwise known as Zoloft, which is an anti-depressant, used to treat depression, obsessive-compulsive disorder and anxiety disorder, and amitriptyline, otherwise known as Elavil, specifically used to treat major depressive disorder.

59.     Despite suffering from serious mental illnesses, Brock was making major efforts to improve his behavior during the summer of 2014. He completed numerous self-help programs and was working on completing his final year of high school. On August 14, 2014, Brock received notice from Central Utah Academy that he was placed on the graduation list for June, 2015, which would have been a huge accomplishment for Brock.

60.     Brock renounced his affiliation with his gang and on August 27, 2014, requested to switch religious affiliations from Christianity to Hinduism.

61.     During this time, Brock was also frequently corresponding with his family and the Human Earth Animal Liberation ("HEAL") organization, a national organization based in Seattle, Washington, that assists troubled individuals in the criminal justice system, to pursue claims for civil rights violations against Provo Canyon School.

62.     Brock found himself again facing the revolving door of solitary confinement periods in late summer, 2014, when he was handed the most recent notices of new disciplinary proceedings.

63.     On September 12, 2014, Brock was seen by Brian Droubay, a social worker, to whom

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 16

Brock complained about being mistreated by CUCF staff.

64.     On September 19, 2014, Brock was sentenced to back-to-back 20-day periods of punitive isolation to begin immediately.  Isolation was ordered for the period September 19, 2014, to October 9, 2014, for having a new tattoo and making verbal threats to staff, and then for the period October 11, 2014, to October 31, 2014, for opening another inmate's door and discharging a liquid from a container at that inmate.

65.     CUCF Policy "FD18/12.03" provides: "<u>Procedure:</u> <u>Outpatient</u> <u>Care</u> <u>Disciplinary</u> <u>Action</u> When disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness."

66.     Contrary to that policy, the disciplinary matters were not referred to his mental health physician to determine if Brock's conduct for which he was being punished by being placed in isolation were connected to Brock's mental illnesses or if the sentence of multiple periods of punitive isolation would have grave consequences on Brock's mental illnesses and treatment program, which it did. At the time Brock was held in punitive isolation, it was widely known, across the nation and around the world, that holding a person in solitary confinement can be expected to cause, or seriously exacerbate, mental illness, deep depression, crushing loneliness and the risk of suicide.

67.     On September 22, 2014, while in punitive isolation, Brock was personally served with

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 17

two new disciplinary notices. The first was for wandering out of bounds, and the second notice was for spraying liquid into another inmate's cell, and having a "stinger" and tattoo paraphernalia in his cell. These notices meant Brock would likely be receiving more sentences of punitive isolation while serving the current time in punitive isolation.

68.     On October 2, 2014, Brock was deprived of his right to leave his isolation cell for exercise.

69.     On the afternoon of October 2, 2014, Officer Cox argued with Brock through the cell door when Brock was inside the cell. Sometime afterward, Officer Cox was seen entering Brock's cell by himself.

70.     Brock was provided a top bunk bed, sheets, and towels in his isolation cell, thereby giving him the means to commit suicide.

71.     Brock placed a towel over his cell door's window, which was a clear indication that Brock was going to harm himself.  The blocked cell window was ignored by the correctional officers who were on duty that night and charged with protecting Brock from committing suicide.

72.     Brock was discovered dead, hanging from the top bunk bed at 6:15 p.m. by an officer distributing medication.

73.     Brock left a note that read as follows: "Send my love to my family and my ex'z! I'm better off gone since I'm already gone!  Thanx for nothing!"

### First Claim for Relief: Eighth Amendment (Cruel and Unusual Punishment)
### Against Defendants Alfred Bigelow, Richard Garden, Don Taylor and Officer Cox
### (collectively referred to as the "CUCF Defendants")

74.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

75.     The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment.

76.     Each of the CUCF Defendants was acting in his individual capacity, under color of state law, and, as a "person" under 42 U.S.C. § 1983, is liable for causing Brock's constitutional deprivations.

77.     The CUCF Defendants perpetrated, encouraged, and/or approved the acts and omissions alleged herein, and knew that such conduct was unjustified and was in violation of Brock's constitutional rights.

78.     The acts and omissions of the CUCF Defendants were a direct and proximate cause of the death of Brock in that the CUCF Defendants caused, and failed to prevent, the occurrence of the constitutional violations suffered by Brock.

79.     By their acts and omissions described herein, the CUCF Defendants deprived Brock of the minimal civilized measure of life's necessities, and violated his basic human dignity and right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution for each of the reasons set forth below.

**A. Deprivation of Basic Human Needs**

80.    The conditions in the CUCF isolation cells are unduly harsh, and include but are not limited to: isolation in cells that are sealed off from contact with other prisoners; the lack of windows in cells; only being permitted out of the cell for, at most, one hour every other day, which was the only opportunity to take a shower; being denied access to recreation, exercise equipment, and the library; being denied any visitation; being denied any phone calls; and being denied commissary, which prevents inmates from being able to purchase materials needed to send letters to family and friends.

81.    The cumulative effect of extremely prolonged confinement, along with the horrific conditions of confinement in isolation, constitute a serious deprivation of basic human needs, including but not limited to: normal human contact, environmental and sensory stimulation, mental and physical health, physical exercise, sleep, nutrition, and meaningful activity.

**B. Imposition of Serious Psychological and Physical Injuries, Pain, and Suffering**

82.    Extremely prolonged exposure to these deprivations of basic human needs imposed serious psychological pain and suffering and permanent psychological and physical injury on Brock, resulting in his suicide.  Suicide rates among incarcerated people are significant at greater for those placed in isolation, a fact that has been well known for many years.

83.    CUCF Defendants' acts and omissions were especially egregious, given CUCF Defendants knew it would cause or exacerbate Brock's well-documented brain damage, severe

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 20

mental illness, mental anguish, helplessness, depression, anxiety, and suicidal tendencies, and that Brock's conduct for which he was being punished by CUCF Defendants and placed in isolation was a product of his brain damage, low IQ, and mental illnesses.

## C. Disproportionate Punishment

84.     CUCF Defendants' actions of placing Brock in repeated and prolonged periods of isolation imposed an extremely disproportionate series of punishments on Brock. CUCF Defendants had no legitimate penological interest in placing Brock in isolation over and over again without serious disciplinary or violent infraction, nor were those sentences rationally related to any legitimate security needs.

85.     CUCF Defendants' infliction of significant psychological and physical harm constitutes an intolerable practice in modern society and is disproportionate punishment in violation of the Eighth Amendment to the United States Constitution.

## D. Deprivation of Human Dignity in Violation of Contemporary Standards of Human Decency

86.     CUCF Defendants' repeated use of solitary confinement under the debilitating and extreme conditions existing at CUCF stripped Brock of his basic dignity, humanity and sanity, in violation of contemporary standards of human decency and constituted cruel and unusual treatment prohibited by the Eighth Amendment to the United States Constitution.

87.     The CUCF Defendants' acts and omissions violated contemporary standards of human

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 21

dignity and decency as evidenced by the fact that Utah has the highest number of prison inmate suicides nationally, with that number exponentially growing during the time of Brock's incarceration and suicide.

88.     The unconstitutionality of the CUCF Defendants' acts and omissions with respect to Brock is also evidenced by the international community's condemnation of the practice of prolonged and indefinite solitary confinement under very harsh and stifling conditions, such as those that existed at CUCF. Such condemnation is reflected in international treaties such as the Convention Against Torture, the International Covenant on Civil and Political Rights, decisions and declarations of international bodies, customary international law, and decisions of regional and national courts, such as the European Court of Human Rights and Canadian courts. The outrageousness and illegality of holding Brock in isolation for extended periods of time, and the significantly higher risk of suicide because of that isolation, was at all relevant times reflected in easily-accessible literature, including the following: Metzner, J. & Fellner, J., "Solitary Confinement and Mental Illness in U.S. Prisons: A Challenge for Medical Ethics," J Am Acad Psychiatry Law 38:1:104–108 (March 2010); Reyes, H., "The worst scars are in the mind: psychological torture," Int. Rev. Red Cross 89:591–617 (2007); Basoglu, M, Livanou, M., Crnobaric, C., "Torture vs. other cruel, inhuman and degrading treatment: is the distinction real or apparent?" Arch Gen Psychiatry 64: 277–85 (2007); Smith, PS: The effects of solitary confinement on prison inmates: a brief history and review of the literature," Crim. Just.

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 22

34:441–568 (2006); Abaramsky, S. & Fellner, J., "Ill-equipped: US prisons and offenders with mental illness," Human Rights Watch, 145–68 (2003); White, T., Schimmel, D., Frickey, R., "A comprehensive analysis of suicide in federal prisons: a fifteen-year review," J. Correct. Health Care 9:321–43 (2002).

### E. Deliberate Indifference to Brock's Serious Medical Needs, Health, and Safety

89.     CUCF Defendants were aware of all of the deprivations suffered by Brock and have condoned them and have been deliberately indifferent to Brock's needs.

90.     It should have been obvious to the CUCF Defendants and to any reasonable person that the conditions imposed on Brock would cause tremendous mental anguish, suffering, pain, and a much higher risk of suicide. Moreover, the CUCF Defendants were aware that Brock was already suffering from mental illness, that Brock had repeatedly complained he was being mistreated by staff, and that Brock was experiencing significant and lasting injury. CUCF Defendants were deliberately indifferent to Brock's tremendous anguish, pain, suffering, and increased risk of suicide.

91.     CUCF Defendants knew that, as a result of being placed in isolation, there was a strong likelihood that Brock was in danger of serious personal harm, including self-harm and suicide.

92.     CUCF Defendants owed at least the following duties to Brock:

   a.   to ensure that Brock, who was subjected to institutional discipline for minor offenses and was suffering from mental illness and disabilities, was not deprived of basic human

needs, including, but not limited to, human contact, environmental and sensory stimulation, attention to mental and physical health, physical exercise, sleep, nutrition, and meaningful activity;

b.  to ensure Brock's safety;

c.  to ensure that Brock was given the proper medical and mental health care;

d.  to ensure that Brock was provided a level of health care that a civilized society would think necessary;

e.  to conduct an appropriate and complete suicide assessment;

f.  to create and implement an appropriate mental health treatment plan;

g.  to follow clinical judgments and recommendations;

h.  to promptly evaluate Brock, who was gravely disabled and at risk of serious harm, and transfer him to a psychiatric hospital; and

i.  to take precautions to prevent Brock's suicide.

93.  CUCF Defendants breached these duties and were deliberately indifferent to Brock's needs in at least the following particulars:

a.  repeatedly placing Brock in prolonged isolation, thereby imposing an extremely disproportionate punishment without a legitimate penological interest for infractions that were minor and nonviolent, and therefore not related to any legitimate security need;

b.  repeatedly placing Brock in prolonged isolation without regard to the effect that the

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 24

isolation would have on his known and profound mental health condition;

c.   failing to ensure Brock's medical safety;

d.   failing to ensure that Brock was provided a level of health care that a civilized society would think necessary;

e.   failing to ensure the reasonable safety and health of Brock, particularly in light of his serious mental health problems; and

f.   failing to intervene and prevent Brock's death by suicide.

94.   CUCF Defendants failed to provide necessary mental health treatment and adequate observation for safety for Brock while he was incarcerated at CUCF, particularly when he was held in isolation.

95.   CUCF Defendants' acts and omissions as alleged herein, including, but not limited to, their failure to provide Brock with medical or psychiatric care and/or to take other measures to protect him from physical, emotional, and mental harm and to prevent his attempting suicide after notice of his psychiatric condition, and while being held in isolation, constituted deliberate indifference to Brock's serious medical needs, health and safety.

96.   As a direct and proximate result of CUCF Defendants' conduct and omissions, Brock experienced physical pain, severe emotional distress and mental anguish, deep depression, crushing loneliness, as well as the loss of his life and other damages alleged herein.

97.   Considering Brock's brain damage and an extremely low IQ, coupled with a current and

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 25

ongoing diagnosis of major depressive disorder and unspecified psychosis, and the crushing psychological impact of prolonged isolation, Brock's death was manifestly foreseeable.

98.    Brock was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been stabilized.

99.    Accordingly, Plaintiff seeks general damages in an appropriate amount, greater than $300,000, to be determined at trial, as compensation for the pain and suffering Brock endured prior to his death, and for the loss of his life.

100.   Plaintiff is entitled to attorney's fees and costs against the CUCF Defendants under 42 U.S.C. § 1988.

101.   The aforementioned acts and omissions of CUCF Defendants were willful, wanton, malicious, grossly reckless, and oppressive. The egregious nature of CUCF Defendants' deliberate indifference and reckless disregard to the health, safety, and the very life of Brock justifies an award of punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Second Claim for Relief: Eighth Amendment (Cruel and Unusual Punishment)**
**Against Defendant Don Taylor**

102.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

103.   The Eighth Amendment of the United States Constitution prohibits the infliction of

cruel and unusual punishment.

104.    Defendant Taylor inflicted on Brock, an inmate with severe mental health conditions, inappropriate and extremely disproportionate discipline for relatively minor offenses, causing Brock to undergo long periods of isolation that had catastrophic consequences to his mental health, leading to his death by suicide. Defendant Taylor should have known, and did know, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis and major depressive disorder and was under treatment for these conditions at the time Defendant Taylor imposed back-to-back sentences of 20 days in punitive isolation. Defendant Taylor further should have known, and did know, that holding Brock in punitive isolation was likely to, and did, cause or exacerbate Brock's severe mental illness, mental anguish, helplessness, depression, anxiety, insanity, and risk of suicide.

105.    Defendant Taylor acted with deliberate indifference by failing to follow policies to obtain recommendations from Brock's mental health treatment provider when sentencing Brock to his final periods of isolation, showing deliberate indifference to Brock's serious mental health conditions.

106.    As a direct and proximate result of Defendant Taylor's actions, inactions, and deliberate indifference, Brock was deprived of his rights in violation of the Eighth Amendment to the Constitution of the United States, leading to the loss of his life by suicide.

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 27

107.    As a direct and proximate result of Defendant Taylor's conduct and omissions, Brock experienced physical pain, severe emotional distress and mental anguish, deep depression, crushing loneliness, as well as the loss of his life and other damages alleged herein.

108.    Considering Brock's brain damage and an extremely low IQ, coupled with a current and ongoing diagnosis of major depressive disorder and unspecified psychosis, and the crushing psychological impact of prolonged isolation, Brock's death was manifestly foreseeable.

109.    Brock was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been stabilized.

110.    The violation of Brock's rights is actionable under 42 U.S.C. § 1983, and Plaintiff is entitled to judgment against Defendant Taylor for damages in an amount, greater than $300,000, to be determined at trial.

111.    Plaintiff is entitled to attorney's fees and costs against Defendant Taylor under 42 U.S.C. § 1988.

112.    Plaintiff is entitled to punitive damages, as may be allowed by law, due to Defendant Taylor's willful, wanton, and grossly reckless conduct.

### Third Claim for Relief: Eighth Amendment (Cruel and Unusual Punishment) Against Defendant Officer Cox

113.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 28

114.    The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment.

115.    Defendant Cox knew and should have known, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis, and major depressive disorder; that Brock was under treatment for these conditions; and that prolonged periods of isolation tortured Brock and would cause or exacerbate severe mental illness, mental anguish, helplessness, depression, anxiety, insanity, and suicidal tendencies.

116.    On the day of Brock's death, Defendant Cox should have known, and did know, that Brock was a significantly increased suicide risk.

117.    On the day of Brock's death, Defendant Cox, acting with deliberate indifference and in violation of prison policy, entered Brock's isolation cell alone, got into a verbal altercation with Brock, and refused to allow Brock out of his cell that day for exercise, all of which foreseeably and proximately caused Brock to lose his life by suicide.

118.    Thereafter, Defendant Cox, again acting with deliberate indifference, failed to monitor Brock to prevent his suicide even when put on notice of the possibility of a suicide attempt when Brock hung a towel over the window of his cell prior his suicide.

119.    As a direct and proximate result of Defendant Cox's actions, inactions, and deliberate indifference, Brock was deprived of his rights in violation of the Eighth Amendment to the

Constitution of the United States, leading to the loss of his life by suicide.

120.    The violation of Brock's rights is actionable under 42 U.S.C. § 1983, and Plaintiff is entitled to judgment against Defendant Cox for damages in an amount, greater than $300,000, to be determined at trial.

121.    Plaintiff is entitled to attorney's fees and costs against Defendant Cox under 42 U.S.C. § 1988.

122.    Plaintiff is entitled to punitive damages, as may be allowed by law, due to Defendant Cox's willful, wanton, and grossly reckless conduct.

### Fourth Claim for Relief: Fourteenth Amendments
### Against Defendants Brent Platt, John DeWitt, Futures Through Choices,
### Universal Health Services, and Jeremy Cottle
### (collectively referred to as the "DCFS Defendants")

123.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

124.    The Fourteenth Amendment guarantees that a person who is involuntarily confined to a juvenile facility retains liberty interests that are protected by the due process clause, including but not limited to, the right to reasonably safe conditions of confinement; the right to be free from unreasonable bodily restraints; and the right to such minimally adequate training of facility staff as reasonably may be required by such liberty interests.

125.    Each of the DCFS Defendants, was acting in his individual capacity under color of state

law, is a "person" under 42 U.S.C. § 1983, and is liable for causing the constitutional deprivations suffered by Brock.

126.   DCFS Defendants' acts and omissions are evidence of an ongoing pattern of deliberate indifference, including the following:

   a.   the failure to conduct appropriate and complete suicide assessments;

   b.   the failure to create and implement appropriate mental health treatment plans;

   c.   the failure to follow clinical judgments and recommendations;

   d.   the failure to promptly evaluate involuntarily confined juveniles who are gravely disabled and at risk of serious harm and transfer to a psychiatric hospital;

   e.   the failure to implement appropriate emergency treatment policies;

   f.   the failure to provide appropriate staffing and training to provide minimally adequate treatment for seriously ill involuntary confined juveniles at Salt Lake Valley Detention Center, Futures Through Choices, and Provo Canyon School; and

   g.   the failure to protect involuntary confined juveniles from suffering physical and psychological abuse by its staff.

127.   DCFS Defendants perpetrated, encouraged, and/or approved the acts and omissions alleged herein, and knew that such conduct was unjustified and would result in violations of Brock's constitutional rights.

128.   The acts and omissions of the DCFS Defendants were a direct and proximate cause of

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 31

Brock's injuries, in that the DCFS Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations suffered by Brock, including being physically and psychologically abused by its staff. DCFS Defendants also failed to take other measures to prevent the constitutional violations suffered by Brock.

129.    By their acts and omissions described herein, the DCFS Defendants deprived Brock of the minimal civilized measure of life's necessities, and have violated his basic human dignity and rights, including the right to reasonably safe conditions of confinement; the right to be free from unreasonable bodily restraints; and the right to such minimally adequate training of facility staff as reasonably may be required by such liberty interests, under the Fourteenth Amendment to the United States Constitution.

**A. Deprivation of Basic Human Need**

130.    The conditions in the Salt Lake Valley Detention Center's "lock-down" are unduly harsh, and include, but are not limited to, periods with no mattress, no sheets, no recreation of any kind, no church, no books, no pencil, and no paper in isolation in cells that are sealed off from contact with other people.

131.    The cumulative effect of extremely prolonged confinement on a thirteen-year-old boy with brain damage and a 70 IQ, along with the crushing conditions of confinement in isolation, constitute a serious deprivation of basic human needs, including, but not limited to, normal human contact, environmental and sensory stimulation, mental and physical health, physical

exercise, sleep, nutrition, and meaningful activity.

**B. Imposition of Serious Psychological and Physical Injuries, Pain, and Suffering**

132.    Extremely prolonged exposure to these deprivations of basic human needs imposed serious psychological pain and suffering and permanent psychological and physical injury on Brock.

133.    Failing to protect Brock from suffering physical and psychological abuse at the hands of the staff member at FTC imposed serious psychological pain and suffering and permanent psychological and physical injury on Brock.

134.    Failing to protect Brock from repeatedly suffering physical and psychological abuse at the hands of staff members at Provo Canyon School imposed serious psychological pain and suffering and permanent psychological and physical injury on Brock.

135.    Failing to follow the Juvenile Court's Order to work with Dr. Nilsson and sending Brock hundreds of miles away to a facility that could not provide critical mental health treatment imposed serious psychological pain and suffering and permanent psychological and physical injury on Brock.

**C. Deprivation of Human Dignity in Violation of Contemporary Standards of Human Decency**

136.    DCFS Defendants' infliction of significant psychological and physical harm constitutes an intolerable practice in modern society and is a violation of Brock's civil rights under the

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 33

Fourteenth Amendment to the Constitution.

**D. Deliberate Indifference to Brock's Serious Medical Needs, Health, and Safety**

137.    DCFS Defendants were aware of all of the deprivations and abuses complained of herein, and have condoned and been deliberately indifferent to such conduct.

138.    It was obvious to the DCFS Defendants and to any reasonable person that the abuses and conditions imposed on Brock would cause tremendous mental anguish, suffering, and pain to Brock. Moreover, the DCFS Defendants were aware that Brock was suffering from mental illness, and had repeatedly complained that he was being mistreated by staff and that he was experiencing significant and lasting injury. DCFS Defendants were deliberately indifferent to Brock's tremendous anguish, pain, and suffering.

139.    DCFS Defendants knew that there was a strong likelihood that Brock was in danger of serious personal harm, including self-harm and attempted suicide.

140.    DCFS Defendants owed at least the following duties to Brock:

   a.   to ensure that Brock, who was subjected to institutional discipline for minor offenses and was suffering from mental illness and disabilities was not deprived of basic human needs, including but not limited to, human contact, environmental and sensory stimulation, attention to mental and physical health, physical exercise, sleep, nutrition, and meaningful activity;

   b.   to ensure Brock's safety;

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 34

c.  to ensure that Brock was given the proper medical and mental health care, especially when under a court order to do so;

d.  to ensure that Brock was provided a level of health care that a civilized society would think necessary;

e.  to conduct an appropriate and complete suicide assessment;

f.  to create and implement an appropriate mental health treatment plan:

g.  to follow clinical judgments and recommendations;

h.  to promptly evaluate Brock, who was gravely disabled and at risk of serious harm, and transfer him to a psychiatric hospital;

i.  to implement appropriate emergency treatment plans;

j.  to provide appropriate staffing and training at DCFS facilities; and

k.  to protect Brock from being physically and psychologically abused by its staff.

141.  DCFS Defendants breached these duties and were deliberately indifferent to Brock's needs in at least the following particulars:

a.  Placing Brock in prolonged isolation without regard to the effect that the isolation would have on his known and profound mental health condition;

b.  failing to adequately supervise or train employees and contractors to ensure Brock was provided reasonably safe conditions of confinement;

c.  failing to adequately supervise or train its employees and contractors to ensure that Brock

Estate of Brock Tucker v. Utah Department of Corrections, et al.

Complaint – Page 35

was provided a level of health care that a civilized society would think necessary;

d.   failing to adequately supervise or train its employees and contractors to ensure the reasonable safety and health of Brock, including that his mental health issues were being treated;

e.   failing to protect Brock from being physically and psychologically abused by staff; and

f.   failing to intervene and prevent serious and permanent injuries to Brock.

142.   DCFS Defendants failed to provide necessary mental health treatment and adequate observation for Brock's safety while he was incarcerated and/or involuntarily committed to DCFS facilities.

143.   DCFS Defendants' acts and omissions, including but not limited to, their failure to provide Brock with medical or psychiatric care and to take other measures to protect him from physical harm and to prevent his attempting suicide after notice of his psychiatric condition, along with the acts and omissions of the DCFS Defendants in failing to train and supervise its staff in order to prevent Brock's serious and permanent injuries, which contributed to Brock's suicide, constituted deliberate indifference to Brock's serious medical needs, health, and safety.

144.   As a direct and proximate result of DCFS Defendants' conduct, Brock suffered physical pain, severe emotional distress, and mental anguish, which injuries were serious and permanent.

145.   Brock was caused to endure prolonged pain and suffering resulting in serious and permanent injuries, which ultimately led to the loss of his life, even though his condition could

have been stabilized. Accordingly, Plaintiff seeks damages in an appropriate amount, greater than $300,000, to be determined at trial, as compensation for the pain and suffering Brock endured prior to his death.

146. Plaintiff is entitled to attorney's fees and costs against DCFS Defendants under 42 U.S.C. § 1988.

147. The aforementioned acts of DCFS Defendants were willful, wanton, malicious, grossly reckless, and oppressive. The egregious nature of DCFS Defendants' deliberate indifference and reckless disregard to the health, safety, and the very life of Brock justifies an award of punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Fifth Claim for Relief: Article I, Section 9 of the Utah Constitution (Unnecessary Rigor)**
**Against All Defendants**

148. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

149. Article I, section 9 of the Utah Constitution provides: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

150. The unnecessary rigor provision embodies evolving touchstones of humanity, and is based upon internationally accepted standards of humane treatment as articulated in the Universal Declaration of Human Rights, the International Covenant of Civil and Political Rights,

and the Standard Minimum Rules for the Treatment of Prisoners adopted by the First United Nations Congress on the Prevention of Crime and the Treatment of Offenders in 1955. Under this standard, the main consideration is whether a particular prison practice would be recognized as an abuse to the extent that it cannot be justified by necessity. The definition of "abuse" focuses on "needlessly harsh, degrading, or dehumanizing" treatment of prisoners.

151.   The acts complained of by the Plaintiff herein presented an obvious and known substantial risk of serious injury for which there was no reasonable justification at the time.

152.   The acts complained of constituted a flagrant violation of Brock's rights under Article I, section 9 of the Utah Constitution to be free from cruel and unusual punishment and not to be treated with unnecessary rigor and ultimately caused the death of Brock.

153.   Existing remedies do not redress Brock's injuries, because there are no comparable remedies under state common or statutory law, and because the protections of Article I, section 9 are broader than those of the United States Constitution.

154.   Defendants exhibited a shocking degree of deliberate indifference and reckless disregard for the serious and evident medical needs of Brock.

155.   As a direct and proximate result of Defendants' deliberate indifference and reckless disregard, Brock suffered serious and permanent injuries, including but not limited to, physical pain, severe emotional distress and mental anguish, deep depression, and crushing loneliness, all of which ultimately led to the loss of his life.

156.    Brock was caused to endure prolonged pain and suffering, even though his condition could have been stabilized. Accordingly, Plaintiff seeks damages in an appropriate amount, greater than $300,000, to be determined at trial, as compensation for the pain and suffering Brock endured prior to his death.

157.    The aforementioned acts of Defendants were willful, wanton, malicious, grossly reckless, and oppressive. The egregious nature of Defendants' deliberate indifference and reckless disregard to the health, safety, and the very life of Brock justifies an award of punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## PRAYER FOR RELIEF

Wherefore,  demanding trial by jury, Plaintiff prays for the following relief:

1.    Compensatory damages against each Defendant, jointly and severally, in the amount proven at trial;

2.    Funeral and burial expenses, and incidental expenses not yet fully ascertained;

3.    General damages, including damages for physical and emotional pain; emotional distress; hardship; suffering; shock; worry; anxiety; sleeplessness; illness; trauma; and the loss of the services, society, care, and protection of the decedent;

4.    Prejudgment interest;

5.    Punitive and exemplary damages against each individually named Defendant in an amount appropriate to punish Defendant(s) and deter others from engaging in similar

misconduct;

6.      Costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and

as otherwise authorized by statute or law; and

7.      Such other relief as the Court may deem proper.

<strong>JURY TRIAL DEMAND</strong>

Plaintiff hereby demands trial by jury.

Dated this 3rd day of October, 2016.


                                        /s/ Ross C. Anderson               .

                                        Ross C. Anderson (#0109)
                                        Janet M. Conway (#7488)
                                        **LEWIS HANSEN**
                                        The Judge Building
                                        Eight East Broadway, Suite 410
                                        Salt Lake City, Utah 84111
                                        Telephone: (801) 746-6300
                                        Fax: (801) 746-6301
                                        randerson@lewishansen.com
                                        jconway@lewishansen.com

                                        *Attorneys for Plaintiff*