Phillip S. Ferguson, #1063
   Phillip.Ferguson@chrisjen.com
Sarah Elizabeth Spencer, #11141
   Sarah.Spencer@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111-2047
Telephone:  (801) 323-5000
Facsimile:   (801) 355-3472
*Attorneys for Defendant Futures Through Choices, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANET CRANE, as Administrator of the Estate of BROCK TUCKER,<br><br>Plaintiffs,<br><br>vs.<br><br>UTAH DEPARTMENT OF CORRECTIONS, ALFRED BIGELOW, RICHARD GARDEN, DON TAYLOR, OFFICER COX, BRENT PLATT, JOHN DeWITT, FUTURES THROUGH CHOICES, INC., UNIVERSAL HEALTH SERVICES, INC., and JEREMY COTTLE,<br><br>Defendants. | **DEFENDANT FUTURES THROUGH CHOICES, LLC'S F.R.C.P. 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br><br>Case No. 2:16-cv-1103-DBP<br><br>Magistrate Judge Dustin B. Pead |

Defendant Futures Through Choices, Inc. ("Defendant"), by and through undersigned counsel of record and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submits the following motion to dismiss for failure to state a claim, stating as follows:

# INTRODUCTION

Plaintiff Janet Crane has filed this lawsuit on behalf of the Estate of Brock Tucker. Mr. Tucker was Ms. Crane's grandson. Plaintiff alleges that Brock Tucker died on October 2, 2014 while in the custody of the State of Utah Department of Corrections. According to the complaint, Mr. Tucker committed suicide by hanging. At that time, he was 19 years old.

Six and a half years before he died, when he was approximately 13 years old, Mr. Tucker was in custody of Futures Through Choices, Inc.[1] Futures had contracted with the State of Utah Department of Human Services, Division of Child and Family Services ("DCFS") to provide youth treatment to children under DCFS's care.

Mr. Tucker alleges that while he was in Futures's care, a Futures employee physically and verbally assaulted him by picking him up, squeezing him so that he could not breathe, twisting his arm behind his back and grabbing his hair.[2] Plaintiff claims that this assault violated Mr. Tucker's constitutional rights. As against Futures, Plaintiff's complaint alleges a cause of action arising under 42 U.S.C. Section 1983 for claimed violations of the fourteenth amendment and a cause of action alleging a violation of the unnecessary rigor provision of Article 1, Section 9 of the Utah Constitution.

Plaintiff has failed to state claims upon which relief may be granted. Initially, as to Plaintiff's Section 1983 claim, because Futures's 2008 conduct was not the cause of Brock's suicide some six and a half years later, the Utah survival statute limits Brock's estate's recovery

---

[1] Complaint at ¶ 30.
[2] Complaint at ¶ 30.

to special damages only.³ Pursuant to the survival statute, the Estate may only recover certain special damages but not general damages for pain and suffering.⁴

Second, Plaintiff's Article I, Section 9 claim is barred by the two-year statute of limitation applicable to such claims.

Finally, to the extent Plaintiff Janet Crane purports to allege an individual claim against Futures under Section 1983 for redress of her own fourteenth amendment rights, Plaintiff Janet Crane's claims should be dismissed. Janet Crane individually has no cause of action under Section 1983 arising from a physical assault to her grandson that did not cause his death.

## STATEMENT OF FACTS

Pursuant to the applicable standard of review for Rule 12 motions and for purposes of the instant motion only, Futures assumes the truth of the following facts. The facts set forth below are quoted verbatim from Plaintiff's complaint.

1. "Brock committed suicide on October 2, 2014, by hanging himself from his upper bunk, in solitary confinement at the Central Utah Correctional Facility, only two months before he was hoping to be paroled. Brock was nineteen years old."⁵

2. "On March 7, 2008, DCFS was awarded custody of Brock. While pending placement in a mental health treatment facility, Brock was placed in Salt Lake Valley Detention

---

³ *See Robertson v. Wegmann*, 436 U.S. 584 (1978) (applying state law survivor statutes to Section 1983 claims).

⁴ *Bybee v. Abdulla*, 189 P.3d 40, 2008 UT 35, ¶ 33 ("With its enactment of the survival statute, the Legislature codified the principle that the death of an injured person does not exonerate a tortfeasor from liability for damages even if the death was unrelated to the wrongful act of the tortfeasor. In such a case, heirs may recover on behalf of the decedent certain special damages, but may not recover for the pain and suffering of the decedent and similar components of recovery falling within the category of general damages. The survival statute confers standing on heirs but limits what they can recover.").

⁵ Complaint at ¶ 1.

Center (the 'detention center'), which is run by Utah's Juvenile Justice Services. DCFS failed to find placement in a treatment facility for Brock for two months and left Brock in the detention center until May 15, 2008."[6]

3. "On May 15, 2008, at the direction of DCFS, Brock was picked up from the detention center by a representative from Futures Through Choices, where he was held for no more than 48 hours before he was physically assaulted by a staff member, leaving marks and bruising across his body, beginning at his biceps and across his chest. One of the staff members repeatedly lifted Brock up and squeezed him until he could not breathe, then released Brock long enough to catch his breath. That same staff member also twisted Brock's arm behind his back, grabbed him by the hair, pushed him into the bathroom in front of the mirror, and told Brock that he was going to make him 'cry like a bitch.' After DCFS failed to protect Brock from harm following his assault by the staff member, Brock ran away from the facility."[7]

4. Plaintiff claims that Futures "is a private 501(c)(3) corporation, located in Bountiful, Utah. At relevant times, [Futures] was operating under contract with DCFS, received juveniles via in-custody detention, and was acting under color of law. At all relevant times, [Futures] employed the staff member(s) who physically assaulted Brock while Brock was involuntarily confined at its facility in 2008."[8]

---

[6] Complaint at ¶ 29.
[7] Complaint at ¶ 30.
[8] Complaint at ¶ 14.

## ARGUMENT

### I.     Legal standard for a F.R.C.P. 12(b)(6) motion to dismiss.

As Futures demonstrates in this motion, Plaintiff has failed "to state a claim upon which relief can be granted."[9]  A motion to dismiss under Rule 12(b)(6) challenges the adequacy of the complaint on its face, testing whether the plaintiff has properly stated a cognizable cause of action.  "In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party."[10]

"[W]ell-pleaded facts" must do more than "infer ... the mere possibility" of a cognizable claim; they must "plausibly give rise to an entitlement to relief."[11]  A complaint is insufficient under Rule 12(b)(6) if it fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12]  Only a complaint "that states a plausible claim for relief survives a motion to dismiss."[13]

At the pleading stage, therefore, a complaint must meet "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"[14]  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[9] FED. R. CIV. P. 12(b)(6).
[10] *Fitzen v. Artspace Affordable Housing, L.P.,* Case No. 2:09-CV-470-TS (D. Utah May 10, 2012).
[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[12] *Ashcroft*, 129 S.Ct. at 1949.
[13] *Id*. at 1950.
[14] *Twombly* at 557 (*quoting* F.R.C.P. 8(a)(2)) (alterations in original).

cause of action will not do[.]"[15] Finally, although courts must accept all well-pleaded facts as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]"[16]

## II. Pursuant to Utah's survival statute, the Estate of Brock Tucker may only recover special damages on its Section 1983 claim.

As explained below, because the alleged constitutional violation did not cause Plaintiff's death, the Utah survival statute limits Plaintiff's estate to recovering only special damages. Accordingly, to the extent Plaintiff's complaint requests general and punitive damages against Futures, Plaintiff's Section 1983 claim should be dismissed.

### a. Utah's survival statute.

Utah's survival statute is codified at Section 78B-3-107. The statute in effect in 2008—the time of the alleged constitutional violation by Futures—partially abated the remedies available in a cause of action where the plaintiff died of an unrelated cause after the occurrence of the alleged wrongful conduct.[17] Under the law in effect as of May of 2008, "the death of an

---

[15] *Id.* at 555.
[16] *Id.*
[17] Utah Code Ann. § 78B-3-107 (Supp. 2008) provides:

> (1) (a) A cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of another, does not abate upon the death of the wrongdoer or the injured person. The injured person, or the personal representatives or heirs of the person who died, has a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages, subject to Subsection (1)(b).
> (b) If, prior to judgment or settlement, the injured person dies as a result of a cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of the person have a cause of action against the wrongdoer or personal representatives of the wrongdoer only for special damages occurring prior to death which resulted from the injury caused by the wrongdoer, including income loss.

injured person does not exonerate a tortfeasor from liability for damages even if the death was unrelated to the wrongful act of the tortfeasor."[18] "In such a case, heirs may recover on behalf of the decedent certain special damages, but may not recover for the pain and suffering of the decedent and similar components of recovery falling within the category of general damages."[19]

Subsequent to 2008, the Utah legislature amended the survivor statute to permit the recovery of $100,000 in pre-death general damages where an injured party dies of unrelated causes after the accrual of his cause of action.[20] In this case, however, the version of the statute in effect at the time of the alleged constitutional violation controls Plaintiff's claim.[21]

First, Section 78B-3-107 provides that its amendments do not apply retroactively.[22] Second, the Utah Supreme Court recognizes that the relevant time for applying statutory law is "the time of the events giving rise to [the] suit."[23] Finally, although Utah courts have

---

      (c) "Special damages" does not include pain and suffering, loss of enjoyment of life, and other not readily quantifiable damages frequently referred to as general damages.

[18] *Bybee, supra*, 2008 UT 35 at ¶ 33.
[19] *Id.*
[20] See 78B-3-107(1)(b) (Supp. 2016).
[21] The statute was amended after the alleged events to permit recovery of up to $100,000 in general damages. *See* Utah Code 78B-3-107 (Supp. 2016).
[22] *Id.* at § 78B-3-107(3) (Supp. 2016) ("This section may not be construed to be retroactive.").
[23] *Taghipour v. Jerez*, 2002 UT 74, ¶ 5 n. 1, 52 P.3d 1252; *see also State v. Lusk*, 2001 UT 102, ¶¶ 25–31, 37 P.3d 1103 (applying statute of limitations in effect on the date the cause of action accrued); *Irvine v. Salt Lake County*, 785 P.2d 411, 413 (Utah 1989) ("we apply the law of governmental immunity as it existed in March of 1983, the time this cause of action arose."); *Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988) (applying law in effect at the time plaintiff's "cause of action accrued" and refusing to apply subsequent amendments to government immunity statute); *Payne By and Through Payne v. Myers*, 743 P.2d 186, 189-190 (Utah 1987) (plaintiff's claim governed by immunity statute in effect when her cause of action accrued); *Stephens v. Henderson*, 741 P.2d 952, 954 (1987) (comparative fault determined by "when plaintiff's cause of action arose"); *Carlucci v. Utah State Indus. Comm'n*, 725 P.2d 1335, 1336 (Utah 1986) ("The general rule is that the law establishing substantive rights and liabilities when a cause of action arises, and not a subsequently enacted statute, governs the resolution of the dispute.").

retroactively applied some procedural statutory amendments,[24] "only procedural changes 'which do not enlarge, eliminate, or destroy vested or contractual rights' may be applied retroactively."[25]

In this case, the amendments to the survival statute directly affect vested rights, namely the right to recover general damages.[26] Therefore, the amendments are substantive and not procedural and do not apply retroactively. The 2008 version controls what damages the Estate of Brock Tucker can recover in this case. As discussed below, Plaintiff's recovery on his Section 1983 claim is limited to proven special damages only.

### b. The 2008 Utah survival statute partially abates Plaintiff's Section 1983 claim.

Section 1983, which is derived from § 1 of the Civil Rights Act of 1871, creates a cause of action in favor of "the party injured" against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any ... person ... to the deprivation of any rights ... secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 contains no language stating whether claims arising under its provisions abate upon the death of the injured person. In *Robertson v. Wegmann*, 436 U.S. 584 (1978), the United States Supreme Court considered that problem. The *Robertson* court held that state law applies to the question of whether a Section 1983 claim abates after an injured party's death, so long as the state survivor law complies with the policies of section 1983.

---

[24] *See e.g. Roark v. Crabtree*, 893 P.2d 1058 (Utah 1995).

[25] *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995) (*quoting Pilcher v. State Dep't of Social Servs.*, 663 P.2d 450, 455 (Utah 1983).

[26] *See Brown & Root Indus. v. Industrial Comm'n,* 947 P. 2d 671, 675-6 (Utah 1997) (holding that amendments to workers' compensation statute were substantive and could not be applied retroactively)*; Frederick*, *supra*, 890 P.2d at 1020 (amendment was substantive and could not be applicable retroactively because expectation that communications would remain private created vested right in privacy of those communications); *accord Washington Nat'l*, 795 P.2d at 670; *Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976) (contribution statute established new duty and could not apply retroactively).

In *Robertson*, the plaintiff died of unrelated causes after the time of the alleged constitutional violation. Under Louisiana survival law, his Section 1983 claim abated in total upon his death. The United States Supreme Court held that the Louisiana survivor statute applied to the federal claim, even though Louisiana law resulted in the complete abatement of the claim. The Court found that loss of the case in total did not mean the state law was inconsistent with the policies underlying Section 1983: "A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant."[27]

Thus, in cases where death results from an unrelated cause, the relevant inquiry under *Robertson* is whether the state law complies with "the policies underlying § 1983."[28] As this court has correctly concluded, Utah's survival statute complies with the policies underlying Section 1983[29] and with the policies of other federal statutory provisions.[30] Indeed, Utah's statute fashions a damages remedy—availability of special damages—whereas no remedy was available to Mr. Robertson's estate under Louisiana law. Plaintiff here may be able to recover

---

[27] *Id.* at 593.
[28] *Id.* at 594.
[29] *Slavens v. Millard County*, No. 2: 11-CV-00568 (D. Utah Sept. 20, 2013) (ruling that under *Robertson*, "based on the reasoning set forth in *Robertson*, the Court finds that Utah law does not conflict with the federal policy behind section 1983 because some torts can survive death in Utah.").
[30] *See Veater v. Brooklane Apartments, LLC*, No. 2: 11-cv-487 (D. Utah Mar. 31, 2014) (and cases cited) (ruling under *Robertson* "that Utah's survival statute is consistent with the Fair Housing Act.")

special damages whereas Mr. Robertson's claim ceased to exist. Thus, the policies of Section 1983 and the Utah survival statute do not conflict.

In this case, the complaint seeks the recovery of special damages, general damages, and punitive damages against Futures,[31] but the right to recover general and punitive damages abated upon Mr. Tucker's death. To the extent the complaint seeks general and punitive damages, Plaintiff has failed to state a claim upon which relief may be granted and Plaintiff's Section 1983 claim should be dismissed.

### III.     Plaintiff's claim under Article I, Section 9 of the Utah Constitution is barred by the two-year statute of limitation.

Plaintiff alleges that while in the custody of Futures, Mr. Tucker was subjected to physical and verbal assault in May of 2008 in violation of Article I, Section 9 of the Utah Constitution.[32] The complaint does not, however, allege that Futures's May 2008 conduct caused Mr. Tucker's October 2014 death. Plaintiff's Article I, Section 9 claim is time-barred.

Utah Code Section 78B-2-304 requires that a claim "against the state and its employees, for injury to the personal rights of another if not otherwise provided by state or federal law" be filed within two years. Under its plain language, Section 78B-2-304 applies here to Plaintiff's Article I, Section 9 claim. First, Plaintiff contends that Futures, as a contractor of the state of Utah, acted as a state actor and under color of state law, and further claims that Futures is subject

---

[31] *See* complaint at pp. 39-40, prayer for relief ¶ 1-3 & 5.
[32] Article I, Section 9 provides, "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

to constitutional liability for injury to Mr. Tucker's "personal rights,"[33] namely his individual right to be free from unnecessary rigor while in state custody.

Second, the limitation period applicable to Utah constitutional claims is not "otherwise provided by state or federal law." The statute of limitation in the Governmental Immunity Act of Utah would normally apply to claims against the State of Utah for an injury to a person carried out by the state and its employees, but per Utah Supreme Court precedent the Governmental Immunity Act is inapplicable to Utah constitutional claims.[34] Additionally, no provision of the Utah Code, except Section 78B-2-304, directly addresses the statute of limitation applicable to claims against the state for violation of state constitutional rights. And, there is no enabling legislation permitting filing of state constitutional causes of action in Utah. Rather, the common law framework articulated *by Spackman Ex Rel. Spackman v. Board of Educ.*, 16 P. 3d 533, 2000 UT 87 and its progeny governs the showing that must be made to file an action under the Utah Constitution. The Utah Supreme Court has not set forth a common law standard for assessing timeliness of a claim filed under the unnecessary rigor provision of Article I, Section 9 against an state actor acting under color of law.

Plaintiff's Utah Constitution claim is untimely under Section 78B-2-304. Plaintiff was a minor in May of 2008 when Futures allegedly violated his rights under Article I, Section 9 of the

---

[33] *Id.*
[34] *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 51, 250 P.3d 465, ("the Utah Governmental Immunity Act does not apply to claims alleging state constitutional violations.") (*citing Spackman, supra*, 2000 UT 87 at ¶ 20, n. 7 and *Bott v. DeLand*, 922 P.2d 732, 736 (Utah 1996)); *cf. Larson v. Snow College*, 189 F. Supp. 2d 1286, 1294 (D. Utah 2000) (overruled by *Jensen, supra*) (considering whether two-year limitation period in Section 78B-2-304 applied to "state civil rights claims" and incorrectly concluding that two-year period did not apply because the one-year governmental immunity statute of limitation would apply to such a claim).

11

Utah Constitution. Plaintiff's claim was tolled during his minority.[35] The statute of limitation started running on the date he turned 18.[36] However, more than two years elapsed between when tolling stopped (i.e. the day Mr. Tucker turned 18) and the date upon which Plaintiff filed this lawsuit.

Although his date of birth is not alleged in the complaint, Plaintiff alleges that he was 19 years old as of October 2, 2014, the day he died. Because the statute of limitation started running on the day he turned 18, at least one year of the two-year limitation period had already passed before the day he died. And, even assuming *arguendo* Mr. Tucker had only barely turned 19 on the day he died, Plaintiff's lawsuit against Futures was due to be filed no more than a year later, on October 2, 2015. Plaintiff, however, filed this lawsuit on October 3, 2016, two years and a day after Mr. Tucker died. Plaintiff filed his Article I, Section 9 claim more than two years after the statute of limitation started running. The claim is untimely and the Court should dismiss it.

**IV.     Janet Crane individually has no cause of action under 42 U.S.C. § 1983 for vindication of her own fourteenth amendment rights.**

Although the complaint is unclear, it appears that Janet Crane as the grandmother of Brock Tucker is claiming an independent Section 1983 cause of action for violation of her own individual fourteenth amendment rights allegedly arising from the physical and verbal assault of Brock.[37] But Janet Crane has no claim for alleged violation of her own rights; because Futures's

---

[35] Utah Code 78B-2-224 ("A statute of limitations may not be applied to a person's ability to bring an action during a period in which the person is: (1) a minor; or (2) mentally incompetent.").

[36] *See id.*

[37] Plaintiff's complaint states: "Plaintiff Janet Crane, Brock's grandmother and Administrator of the Estate of Brock Tucker hereby asserts claims pursuant to 42 U.S.C. § 1983, the Eighth and

alleged conduct did not cause Brock Tucker's death, Ms. Crane may not pursue a Section 1983 claim in her own right.

Where the alleged constitutional violation does not result in the death of the injured party, such as is the case here, relatives have no cause of action under Section 1983 for claimed violation of their own rights.[38] In the Tenth Circuit, parents may assert a wrongful death claim under Section 1983 only where the alleged constitutional violation caused the death of the injured person and the defendant acted with the specific intent of interfering with the particular relationship.[39] Importantly, the Tenth Circuit has never extended such liability to claims of grandparents, even in cases where the constitutional violation caused the injured person's death and the defendant acted with specific intent to harm the relationship in question.

Here, as alleged in the complaint, Ms. Crane was Mr. Tucker's grandmother, not his parent. Further, Futures's alleged conduct did not cause Mr. Tucker's death. Accordingly, Plaintiff Janet Crane has no Section 1983 claim against Futures arising from any violation of her

---

Fourteenth Amendments to the United States Constitution, and Article I, Section 9 of the Utah Constitution." Complaint at ¶ 2.

[38] *Berry v. City of Muskogee*, 900 F. 2d 1489, 1501 (10th Circuit 1990) (Relatives have an independent right of action under Section 1983 only where the defendant's "constitutional violation caused the death of a victim").

[39] The United States Supreme Court has not yet answered the question of whether or to what extent a wrongful death claim may arise under Section 1983 in favor of relatives of the deceased. The federal circuits are in conflict regarding the availability of such a claim. In *Trujillo v. Bd. of County Commissioners*, 768 F. 2d 1186, 1190 (10th Cir. 1985), the Tenth Circuit held that parents may assert a violation of their own constitutional right of association from the death of their son, so long as the plaintiff can demonstrate that the defendant acted with the specific intent of interfering with the particular relationship. Other circuits, by contrast, have declined to find Section 1983 liability for claims asserted by heirs or relatives. *See e.g. Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) ("…because the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time.").

own constitutional rights. To the extent Plaintiff's complaint purports to allege a violation of Ms. Crane's own constitutional rights, she has failed to state a claim upon which relief may be granted and the Section 1983 claim should be dismissed.

V.  **Alternatively, if the Court were to conclude that Plaintiff's Article I, Section 9 claim were not barred by the statute of limitation, it is likewise limited by the survival statute and by Ms. Crane's inability to pursue redress for her own rights.**

As explained in Section II, Plaintiff's Article I, Section 9 unnecessary rigor claim is barred by the statute of limitation. If the Court disagrees and permits that claim to go forward, the Court should nonetheless limit the claim in the same manner as Plaintiff's Section 1983 claim as explained above. Pursuant to the survival statute, Plaintiff's unnecessary rigor claim is limited to recovery of special damages only. And, if the Utah Constitution claim is timely, Ms. Crane may not seek redress of her own rights. Ms. Crane was not herself subjected to unnecessary rigor; an alleged physical and verbal assault of her minor grandson did not violate any rights Ms. Crane may enjoy under Article I, Section 9 of the Utah Constitution.

## CONCLUSION

Futures respectfully requests the Court grant its motion and limit Plaintiff Estate of Brock Tucker's Section 1983 claim to special damages under the survival statute, dismiss Plaintiff's Article I, Section 9 claim in total as untimely, and dismiss any Section 1983 claim asserted by Janet Crane for alleged vindication of her own constitutional rights.

Alternatively, if the Court finds Plaintiff's Article I, Section 9 claim to be timely, the Court should limit that claim in the same manner as Plaintiff's Section 1983 claim by precluding the recovery of general and punitive damages and precluding Plaintiff Janet Crane from seeking redress for claimed violations of her own rights.

DATED this 12th day of December, 2016.

        CHRISTENSEN & JENSEN, P.C.

        */s/ Sarah E. Spencer*

        Phillip S. Ferguson
        Sarah Elizabeth Spencer
        *Attorneys for Defendant Futures Through Choices, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2016, a true and correct copy of the foregoing **DEFENDANT FUTURES THROUGH CHOICES, LLC'S F.R.C.P. 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** was delivered via the court's electronic filing system to the following:

>Ross C. Anderson – randerson@lewishansen.com
>Janet M. Conway – jconway@lewishansen.com
>*Attorneys for Plaintiff*
>
>Scott D. Cheney – scheney@utah.gov
>Meb W. Anderson – mebanderson@utah.gov
>*Attorneys for Defendants:*
>   *Utah Department of Corrections, Warden Bigelow,*
>   *Dr. Garden, Brent Platt, John DeWitt,*
>   *Officer Taylor and Officer Cox*
>
>Tawni J. Anderson – tanderson@hpslaw.com
>Shelley M. Doi – sdoi@hpslaw.com
>*Attorneys for Defendant Jeremy Cottle*

/s/ Anne L. MacLeod