MEB W. ANDERSON (10227)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Email: mebanderson@agutah.gov

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE STATE OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| JANET CRANE, as Administrator of the Estate of Brock Tucker. | **MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Plaintiff, | Case No. 2:16-cv-1103-DN |
| v. | Judge David Nuffer |
| UTAH DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Utah Department of Corrections, Alfred Bigelow, Richard Garden, Don Taylor, Officer

Cox, Brent Platt, and Susan Burke ("State Defendants"), by and through counsel Meb W.

Anderson, Assistant Utah Attorney General, hereby move for Judgment on the Pleadings.

## <u>Background</u>

This case arises from the tragic death of inmate Brock Tucker while he was incarcerated

at the Utah State Prison's Central Utah Correctional Facility (CUCF).   Tucker had been in and

out of State custody for most of his juvenile and adult life. On October 2, 2014 at the age of

1

nineteen, Tucker hanged himself. He was found in his cell at 6:15 p.m. and efforts to revive him were unsuccessful and he was pronounced dead at the Gunnison Valley Hospital. This lawsuit arises from those events. But Plaintiff's Amended Complaint is replete with speculation and conjecture.[1] This Court has already dismissed defendants Futures Through Choices and Jeremy Cottle, based on a lack of factual allegations.[2]

## Judgment on the Pleadings

Just as in a Motion to Dismiss,[3] to avoid dismissal the complaint must plead sufficient facts, that when taken as true, provide "plausible grounds" that "discovery will reveal evidence" to support plaintiff's allegations.[4] "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."[5] And "Plaintiff's assertion that the Complaint is sufficient because discovery will invariably flush out the strengths and/or weaknesses of the allegations . . ., misapprehends the appropriate role of discovery, which is not to turn up facts necessary to state a claim, but to develop evidence to support the facts already alleged in the Complaint."[6]

---

[1] "[L]egal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments." *Jex v. Utah Cty.*, 2013 WL 869900, at *1 (D. Utah Mar. 7, 2013).

[2] *Crane v. Utah Dep't of Corr.*, 2017 WL 4326490, at *1 (D. Utah Sept. 28, 2017).

[3] "We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Leiser v. Moore*, 903 F.3d 1137, 1139 (10th Cir. 2018) (marks and citation omitted).

[4] *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 556 (2007)

[5] *Estate of Guerrero v. Crowther*, 2017 WL 1288565, at *1 (D. Utah Apr. 6, 2017) (quoting *Twombly*).

[6] *Jex v. Utah Cty.*, 2013 WL 869900, at *4 (D. Utah Mar. 7, 2013) (marks omitted).

**Relevant Facts Found in the Amended Complaint**

The State Defendants aver that the following plausible facts are contained in the Amended Complaint:

1.      The Utah Department of Corrections (UDOC) operates the Central Utah Correctional Facility (CUCF), in Gunnison, Utah.   (Am. Compl., [Docket No. 39, at ¶ 7](#).)

2.      Bigelow was the Warden at the CUCF at the time of Tucker's death. (Am. Compl., [Docket No. 39, at ¶ 8](#).)

3.      Dr. Garden was the Director of the Clinical Services Bureau at the UDOC. ([Docket No. 39, at ¶ 9](#).)

4.      Taylor was an inmate disciplinary hearing officer at CUCF. Taylor sentenced Tucker to two consecutive 20-day punitive isolation periods during September and October 2014. ([Docket No. 39, at ¶ 10](#).)

5.      Officer Cox was a correctional officer at CUCF on October 2, 2014. ([Docket No. 39, at ¶ 11](#).)

6.      Platt was the Director of the Utah Division of Child and Family Services (DCFS). ([Docket No. 39, at ¶ 12](#).)

7.      Burke was the Director of Juvenile Justice Services. ([Docket No. 39, at ¶ 13](#).)

8.      On March 7, 2008, after what is described in the Amended Complaint as a "tragic life" from its outset, DCFS was awarded custody of Tucker and he was placed in the Salt Lake Valley Detention Center, which is run by Utah's Juvenile Justice Services, and where he spent most of his time in "lock down." ([Docket No. 39, at ¶ 29](#).)

9. On May 15, 2008, Tucker was moved to Futures Through Choices where it is alleged that he was almost immediately beaten by a staff member. ([Docket No. 39, at ¶ 30](#).)

10. Dr. Nilsson advised that Tucker had brain damage and should be treated in consultation with a neuropsychologist. ([Docket No. 39, at ¶ 32](#).)

11. As a result of Dr. Nilsson's advice, DCFS sent Tucker to a six-week evaluation program at ARTEC South. At the conclusion, Dr. Sumudra, DCFS's observation and evaluation specialist, stated that she was not qualified to treat Tucker due to his brain damage. Dr. Sumudra stated that Tucker would need to be treated by a neuropsychologist. ([Docket No. 39, at ¶ 33](#).)

12. DCFS sent Tucker to Cinnamon Hills, a facility in St. George that did not provide a neurofeedback program. ([Docket No. 39, at ¶ 34](#).)

13. In May of 2009 Tucker was sent to Provo Canyon School, which did offer a neurofeedback program. ([Docket No. 39, at ¶ 35](#).)

14. It is alleged that Tucker was physically abused at Provo Canyon School. ([Docket No. 39, at ¶ 36](#).)

15. In June of 2009 Tucker attempted suicide while at the Provo Canyon School. ([Docket No. 39, at ¶ 37](#).)

16. Tucker was moved from the Provo Canyon School and sent back to Cinnamon Hills in St. George. ([Docket No. 39, at ¶ 38](#).)

17. By 2011, out of the DCFS and Juvenile Justice systems, Tucker had immersed himself in gang activity. He was arrested and sent to Slate Detention Center from December 2011 to March 2012. ([Docket No. 39, at ¶ 39](#).)

18.     In March 2012 Tucker was charged with auto theft and tried as an adult. ([Docket No. 39, at ¶ 40](#).)

19.     In August of 2012 Tucker was sentenced to imprisonment with two five-year sentences, with possibility of parole on December 1, 2014. ([Docket No. 39, at ¶ 41](#).)

20.     On September 5, 2012 Tucker entered prison as a seventeen-year-old. He was initially sent to the Utah State Prison located in Draper but was transferred to CUCF in Gunnison within a few months. ([Docket No. 39, at ¶ 42](#).)

21.     After Tucker was transferred to CUCF he was disciplined by an Inmate Disciplinary Hearing Officer (IDHO), and in February of 2013 he was sentenced to punitive isolation and spent in excess of over 154 days in punitive isolation over the next year. ([Docket No. 39, at ¶ 43](#).)

22.     On March 2, 2013 Tucker was in punitive isolation and was sentenced to an additional fourteen days of punitive isolation for being "out of bounds." ([Docket No. 39, at ¶ 44](#).)

23.     On March 26, 2013 Tucker was sentenced to 30 days of punitive isolation for misusing medication and being intoxicated. ([Docket No. 39, at ¶ 45](#).)

24.     On that same date, March 26, 2013, Tucker was also sentenced to 20 days of punitive isolation for refusing a direct order and falsely stating that he was allowed to take breaks from his cell while he was in punitive isolation. ([Docket No. 39, at ¶ 46](#).)

25.     On April 24, 2013, while in isolation, Tucker received another sentence of 30 days in punitive isolation, this time for refusing to change housing assignments because the new cellmate was a sex offender. ([Docket No. 39, at ¶ 47](#).)

26. On July 18, 2013 Tucker received twenty days in punitive isolation for misusing medications and giving himself a tattoo. ([Docket No. 39, at ¶ 48](#).)

27. Between March 2, 2013 and August 11, 2013 Tucker was in punitive isolation for a total of 115 of 160 days. ([Docket No. 39, at ¶ 49](#).)

28. On October 22, 2013 Tucker was sentenced to 20 days of punitive isolation for misusing medication. ([Docket No. 39, at ¶ 50](#).)

29. On December 30, 2013 Tucker was sentenced to 20 days of punitive isolation for giving himself a tattoo. ([Docket No. 39, at ¶ 51](#).)

30. On June 9, 2014, Tucker's inmate classification was changed from a level three to a level two, meaning that Tucker was placed in maximum security housing. ([Docket No. 39, at ¶ 52](#).)

31. In June of 2014 Tucker visited Dr. Burnham and was diagnosed with unspecified psychosis and major depressive disorder, along with moderate back pain and hepatitis C. ([Docket No. 39, at ¶ 53](#).)

32. On June 19, 2014 Tucker was prescribed Prozac for anxiety and depression, and Remeron, an anti-depressant that treats major depressive disorders. ([Docket No. 39, at ¶ 56](#).)

33. On July 2, 2014 Dr. Burnham ordered Tucker to outpatient mental health treatment. ([Docket No. 39, at ¶ 57](#).)

34. On July 16, 2014 Tucker was prescribed Zoloft, which is used to treat depression, obsessive-compulsive disorder, and anxiety, as well as Elavil, which is used to treat major depressive disorder. ([Docket No. 39, at ¶ 58](#).)

35.     On September 19, 2014 Tucker received back-to-back 20-day periods of punitive isolation for having a new tattoo, making verbal threats to staff, and for opening another inmate's door and discharging a liquid from a container at that inmate. (Docket No. 39, at ¶ 64.)

36.     CUCF policy states that when an inmate is in outpatient care and is going to be disciplined by an IDHO "the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness." (Docket No. 39, ¶ 65.)

37.     Plaintiff alleges the disciplinary matters for which Tucker was punished on September 19, 2014 were not referred to mental health staff. (Docket No. 39, at ¶ 66.)

38.     On September 22, 2014 while in punitive isolation Tucker was served with two additional disciplinary notices. The first for wandering out of bounds, and the second for spraying liquid into another inmate's cell, having a "stinger," and tattoo paraphernalia in his cell. (Docket No. 39, at ¶ 67.)

39.     On the afternoon of October 2, 2014 Officer Cox argued with Tucker through the cell door. Officer Cox was allegedly seen entering Tucker's cell by himself some time later. (Docket No. 39, at ¶ 69.)

40.     After the verbal altercation with Officer Cox, Tucker was not allowed to leave his isolation cell for exercise that day. (Docket No. 39, at ¶¶ 68, 116.)

41.     The cell Tucker was being held in isolation included a bunk bed, sheets, and a towel. (Docket No. 39, at ¶ 70.)

42.     At some point after the altercation with Officer Cox, Tucker placed a towel over

his cell door's window. ([Docket No. 39, at ¶ 71](#).)

43.      At 6:15 p.m. on October 2, 2014, Brock Tucker was discovered hanging in his cell, by an officer distributing medication. He left a short suicide note. ([Docket No. 39, at ¶ 72](#).)

### Legal Argument

Plaintiff's Amended Complaint fails for two primary reasons. First, the facts do not state a plausible claim. And Second, the State Defendants are entitled to qualified immunity even if the allegations of the Amended Complaint are taken as true.[7]

Claims arising out of an inmate's suicide are treated by the Tenth Circuit as claims based on the failure of prison officials to provide adequate medical care for the prisoner. Court's consider these claims under the "deliberate indifference to serious medical needs test."[8] Death (and therefore suicide) is recognized as a sufficiently serious harm to satisfy the objective standard.[9] The subjective prong of the test requires Plaintiff to present evidence of the prison official's state of mind, and is met only if "the official knows of and disregards an excessive risk to inmate health or safety."[10] "It is not enough for an official to merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; rather, the

---

[7] *See Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (qualified immunity "would be ill served if liability were imposed on an official for conduct that had been held to be lawful, even in an unpublished opinion, by the federal appellate court with jurisdiction over the conduct, at least in the absence of later contrary authority issued before the official acted.").

[8] *Cox v. Glanz*, 800 F.3d 1231, 1247–48 (10th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[9] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[10] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

official must also draw the inference."[11]

The Amended Complaint is devoid of specific allegations of improper conduct by any State Defendant. The argument appears to be that Tucker suffered from many speculative failures of the CUCF. But, in 2015 the United States Supreme Court, addressing a case where an inmate was placed in a cell by himself, and then committed suicide by hanging himself with a bed sheet, held that: "No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols. And to the extent that a robust consensus of cases of persuasive authority in the Courts of Appeals could itself clearly establish the federal right respondent alleges, the weight of that authority at the time of Barkes's death suggested that such a right did not exist."[12]

Also in 2015, the Tenth Circuit held in a prison suicide case brought under 1983 that: "The events alleged in this case are tragic, but we are bound to follow the stringent proof requirements of § 1983 law. Even if defendants had violated some purported ethical and moral responsibility to establish policies and procedures that address the factors most associated with suicide deaths, as Ms. Norman asserts, that would not mean that they had violated the Constitution."[13]

---

[11] *Id.*
[12] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).
[13] *Norman v. Randolph*, 597 F. App'x 988, 991 (10th Cir. 2015) (marks and citation omitted); *see also Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) ("an inmate's right to proper prison suicide screening procedures during booking—was not clearly established in July 2009.").

I.      **Plaintiff has failed to allege a viable first claim for relief under the Eighth Amendment against Warden Bigelow and Dr. Garden based on no affirmative link to the alleged unconstitutional conduct.**[14]

A.      **Claims against Warden Bigelow fail as a matter of law.**

Warden Bigelow, who is only sued in his individual capacity, is named as the supervisor of the CUCF. "The requisite showing of an "affirmative link" between a supervisor and the alleged constitutional injury has "[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind."[15]

Here, Warden Bigelow is not alleged to have had any relevant affirmative link, personal participation, or interactions with Tucker. And Plaintiff does not "identify any policy that [Warden Bigelow] "promulgated, created, implemented or possessed responsibility for" which may have led directly or indirectly to [Tucker]'s death."[16] "Plaintiff's Complaint does not allege any facts showing that [Warden Bigelow] had any personal knowledge of, or interaction with, [Tucker], or that he knew there was a substantial risk that [Tucker] might attempt suicide."[17]

As this Court has recognized, "[t]o survive dismissal for failure to state a claim, a § 1983 claim must clearly state what each individual defendant did to violate Plaintiff's civil rights."[18]

---

[14]  Individual claims for relief are brought against State Defendants IDHO Taylor and Officer Cox, and those defenses are addressed herein.

[15]  *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015).

[16]  *Jex v. Utah Cty.*, 2013 WL 869900, at *4 (D. Utah Mar. 7, 2013).

[17]  *Jex*, 2013 WL 869900, at *4.

[18]  *Crane v. Utah Dep't of Corr.*, 2017 WL 4326490, at *3 (D. Utah Sept. 28, 2017) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action)).

This Court continued in dismissing other DCFS Defendants, "[m]oreover, Plaintiff may not name an entity or individual as a defendant based solely on supervisory position. Plaintiff disregarded these tenets in drafting this claim against Defendant [Bigelow] and the claim is therefore dismissed."[19] Also, "there is no concept of strict supervisor liability under section 1983."[20] Thus, Warden Bigelow should be dismissed with prejudice.

### B. Claims against Dr. Garden fail as a matter of law.

Dr. Garden, who is sued only in his individual capacity, is named as the Medical Director of the Utah State Prison. He is not alleged to have had any relevant affirmative link, personal participation, or interactions with Tucker. "Plaintiff's Complaint does not allege any facts showing that [Dr. Garden] had any personal knowledge of, or interaction with, [Tucker], or that he knew there was a substantial risk that [Tucker] might attempt suicide."[21]

And even if Dr. Garden had some involvement, which he did not, "an inadvertent failure to provide adequate medical care will not support an action."[22] Accordingly, for the same reasons as Warden Bigelow, Dr. Garden should therefore be dismissed with prejudice.

### II. Plaintiff has failed to allege a viable first, second, and third claim for relief under the Eighth Amendment against Hearing Officer Don Taylor and Officer Cox.

Officers Taylor and Cox are named in Plaintiff's first claim for relief under the Eighth Amendment, but also in the second and third claims for relief, again under the Eight

---

[19] *Crane*, 2017 WL 4326490, at *3 (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)).

[20] *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

[21] *Jex*, 2013 WL 869900, at *4.

[22] *Ragland v. Sullivan*, 91 F.3d 159 (10th Cir. 1996).

Amendment. These claims should be dismissed as IDHO Taylor, and Officer Cox, are entitled to qualified immunity. And, it should be noted, that the Tenth Circuit has expressly affirmed, in a case involving the CUCF, that "[i]n essence, this [Complaint] amounts to an argument that the CUCF guards and disciplinary officers had a constitutional obligation to perform psychological screening of the plaintiff. There is no such constitutional obligation."[23]

**A.      IDHO Taylor's valid sentence to punitive isolation was not done in violation of the Eighth Amendment.**

IDHO Taylor sentenced Tucker to punitive isolation for a variety of admitted disciplinary issues. No claim is stated here, and the State Defendants are not aware of any case that has ever held an IDHO is even a proper defendant in an Eighth Amendment claim of deliberate indifference to known risk of suicide. Hearing officers are often sued for due process violations during their hearings, but that is not the claim here. The claim here appears to be that punitive isolation is on its face an Eighth Amendment violation. But "deliberate indifference" requires actual misconduct. Sentencing inmates to punitive isolation is not deliberate indifference.[24]

In fact, the United States Supreme court has held that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."[25] These claims do not even lie against prison officials, let alone hearing

---

[23] *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992) (citing *Elliott v. Cheshire Co.*, 750 F.Supp. 1146, 1151-1153 (D.N.H.1990) (prison officials have no responsibility to anticipate or screen prisoners, in the context of a prisoner which committed suicide while in the prison)).
[24] *See Deloney v. Cty. of Fresno*, 2018 WL 3388921, at *7 (E.D. Cal. July 11, 2018) (transfer to isolation housing does "not plausibly suggest deliberate indifference.").
[25] *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

officers.[26] The Tenth Circuit has held that "[t]urning specifically to solitary confinement issues, generally, the transfer of an inmate to less amenable and more restrictive quarters [even] for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. To the extent that such conditions are restrictive and even harsh, but not cruel and unusual, they are part of the penalty that criminal offenders pay for their offenses against society."[27] And thirty straight years in punitive isolation has been held by the Tenth Circuit to not violate the constitution.[28]

Plaintiff's Amended Complaint intimates that IDHO Taylor erred when he did sentenced Tucker to punitive isolation and allegedly did not contact his psychologist as per prison policy. But the Tenth Circuit has long held that sentencing an inmate to punitive isolation without first obtaining "medical consultation" is not a constitutional violation even if doing so was somehow negligent, careless, or contravened policy.[29] And "the Supreme Court has held that simply failing to follow jail policies is not a constitutional violation in and of itself."[30] An IDHO that sentences a prisoner to punitive isolation for a valid infraction has no affirmative link to, and it is not "deliberately indifferent" conduct if that prisoner commits suicide while in punitive isolation. Thus, IDHO Taylor should be dismissed from this matter with prejudice.

---

[26] *Driggers v. Clark*, 422 F. App'x 747, 750 (10th Cir. 2011) (citation omitted).

[27] *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 753 (10th Cir. 2014) (marks and citation omitted).

[28] *Id.* at 762–64.

[29] *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992).

[30] *Ernst v. Creek Cty. Pub. Facilities Auth.*, 697 F. App'x 931, 934 (10th Cir. 2017) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)).

### B. Officer Cox was not deliberately indifferent to a known and obvious risk of suicide.

There are no specific allegations that indicate that Officer Cox deliberately ignored a known risk of suicide.[31] Many of the cases addressing prison suicides involve inmates who are new or unknown to the prison officials and unknown or undiagnosed mental health problems. Here, to defeat a claim of qualified immunity Plaintiff must show that Officer Cox had "a particularized state of mind: actual knowledge by a prison official of an individual inmate's substantial risk of suicide."[32] Plaintiff can "only succeed on this species of claim by presenting facts suggesting that the facility staff had knowledge of the specific risk that the deceased inmate would commit suicide."[33]

Here, Tucker was housed at the CUCF for well over a year and was being treated for his mental health issues.[34] And there are no allegations that while at CUCF any official missed a "specific" and obvious risk of suicide. The Amended Complaint contains no facts that Officer Cox had "actual knowledge" of a "specific risk" that Tucker was at a "substantial risk of

---

[31] *See duBois v. Payne Cty. Bd. of Cty. Comm'rs*, 543 F. App'x 841, 848 (10th Cir. 2013) (inmates claim they told jail officials victim was suicidal, but the evidence "does not support the conclusion that Sheriff … knew, or should have known, of Peter's condition."); *Daniels v. Glase*, 198 F.3d 257 (10th Cir. 1999) ("She identifies no other information or facts which would or should have alerted jail personnel that Mr. Daniels was a serious suicide risk."); *Barrie v. Grand Cty., Utah*, 119 F.3d 862, 869 (10th Cir. 1997) (same); *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (same).
[32] *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015).
[33] *Id.* at 1249–50.
[34] *See Pettigrew v. Zavaras*, 574 F. App'x 801, 809 (10th Cir. 2014) (treating inmate for mental health issues "does not suggest that they recklessly ignored the risk.")

suicide." "[E]xtremely vague data points miss the mark for purposes of deliberate indifference. Nothing about the limited information to which [Mr. Cox] was privy would have reasonably, much less obviously, conveyed to h[im] that Mr. [Tucker] presented a substantial risk of suicide."[35] And "observable symptoms" are "susceptible to a number of interpretations."[36]

The Amended Complaint indicates that Tucker and Officer Cox had a verbal altercation on the day of Tucker's death. The Tenth Circuit has been expressly clear that a verbal exchange with a guard, even if it triggers a "psychotic episode" is not a constitutional violation.[37] Allegedly, Tucker did not get let out for his daily exercise after the altercation. But the Tenth Circuit has held that one day a week of exercise is sufficient under the Eighth Amendment when an inmate is in punitive isolation.[38] The Amended Complaint also intimates that being in punitive isolation alone was "evidence" of a risk of suicide, which it was not.[39] "Anti-social,

---

[35] *Cox*, 800 F.3d at 1253.

[36] *Id.*

[37] *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992) ("a mere claim of verbal harassment does not state a violation of any right within the meaning of § 1983."); *see also Miller v. Harbaugh*, 698 F.3d 956, 963 (7th Cir. 2012) ("Mental illness, including suicidal ideation, comes in many degrees of severity.").

[38] *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (use of outdoor exercise facility for one hour per week was not sufficient to establish an Eighth Amendment claim); *see also Ajaj v. United States*, 293 Fed.Appx. 575, 582–84 (10th Cir.2008) (limited ability to exercise outdoors did not individually or in concert amount to Eighth Amendment violation).

[39] *Gaston v. Ploeger*, 297 F. App'x 738, 744–45 (10th Cir. 2008) ("the record contains no evidence that [] behavior was unusual for an inmate, especially an inmate who had been . . . moved to an isolated cell[.].").

aggressive behavioral problems" do not rise to the level of a strong risk of suicide."[40] And the act of being placed in a single cell with a bunk bed is not deliberate indifference.[41]

The Amended Complaint indicates that Tucker put a towel over his window. There is no indication that Officer Cox noticed the towel, and the Tenth Circuit has held on similar facts that the failure to recognize a sheet over a window of an inmate found hanging in her cell was not deliberate indifference.[42] Inmates covering their cell window is not an entirely uncommon practice in prison for privacy. A Tenth Circuit case from Kansas involving a prison suicide even recognizes that prison policy may allow temporary cell window obstruction.[43] The Plaintiff in *Gaston v. Ploeger* argued just as Plaintiff here that the failure to notice or remove the window covering, behind which the inmate committed suicide, was deliberate indifference.

The Tenth Circuit held where Plaintiff's arguments centered around her accusations of what should or should not have been done with regard to noticing or removing the paper from the inmate's window, "second guessing is wholly irrelevant, however, to the issue of whether Officer Roberts was deliberately indifferent to a known risk that Mr. Belden would commit

---

[40] *Jackson v. West*, 787 F.3d 1345, 1354 (11th Cir. 2015) ("Absent knowledge of a detainee's suicidal tendencies, . . . failure to prevent suicide has never been held to constitute deliberate indifference.").

[41] *See Miller v. Harbaugh*, 698 F.3d 956, 959 (7th Cir. 2012) (no clearly established deliberate indifference where mentally disturbed youth was "placed alone in a room with a metal-frame bunk bed. There was no mattress on the top bunk. At that time, single-bed rooms were available elsewhere in the St. Charles facility.").

[42] *Norman v. Randolph*, 597 F. App'x 988, 990 (10th Cir. 2015) (although Ms. Gould had put up a sheet across the side of her cell, "Deputy Saeger told them that was not uncommon when a female inmate wanted to take a shower at the back of her cell.").

[43] *Gaston v. Ploeger*, 229 F. App'x 702, 705 (10th Cir. 2007).

suicide. A conclusion that Officer Roberts should have done more is insufficient, because the constitutional claims require a showing much higher than what is required for mere negligence."[44] Officer Roberts, just like Officer Cox here, was entitled to qualified immunity from suit.

Plaintiff's allegations also intimate that nobody was monitoring Tucker, although they do admit that Officer Cox had talked with Tucker in the afternoon, and that he was found at 6:15 p.m. The Tenth Circuit has held that when an inmate is on suicide watch, which Tucker was not, and the jail official mistakenly fails to monitor the inmate for eighty minutes the "error amounts to negligence at the most. That is insufficient to establish deliberate indifference."[45] The Tenth Circuit expressly held that "[i]f anything, the suicide resulted from a failure of frequent monitoring, which, as we have explained, did not amount to deliberate indifference."[46] Clearly "jailers are neither obligated nor able to watch every inmate at every minute of every day."[47]

---

[44] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (marks omitted*); see also Troyanos v. Coats*, 372 F. App'x 932, 935 (11th Cir. 2010) (deliberate indifference to jail suicide requires more than a medical judgment call, an accident, or an inadvertent failure).

[45] *Bame v. Iron Cty.*, 566 F. App'x 731, 739 (10th Cir. 2014) (failure to follow jail policy, and monitor inmates, alone "do not necessarily imply acts of deliberate indifference."); *see also Grabow v. Cty. of Macomb*, 580 F. App'x 300, 311 (6th Cir. 2014) (Plaintiff's estate "failed to establish . . . a strong likelihood that [she] would attempt to take [her] own life in such a manner that failure to take adequate precautions amounted to a deliberate indifference to [her] serious medical needs."); *Hazelton v. DeKalb Cty., Ga.*, 496 F. App'x 931, 933 (11th Cir. 2012) (even where inmate repeatedly pressed the "emergency button" in his cell "there is no evidence that the jail officers . . . knew that there was a strong likelihood that he would harm himself.").

[46] *Bame*, 566 F. App'x at 741.

[47] *Gaston*, 297 F. App'x at 743; *see also A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 727 (8th Cir. 2018) (allegation of complete failure to monitor inmate was insufficient because "[d]eliberate indifference requires proof of criminal recklessness.").

These few specific facts, even when considered in total, do not come close to evidencing deliberate indifference to a known risk of suicide. These facts are only evidence of ordinary incidents of prison life. There is no case law that indicates that facts as those alleged here constitute notice of a known risk of suicide. In fact, the cases indicate there was no clearly established constitutional violation here.

As an example, in the *Taylor v. Barkes* cases cited above, the United States Supreme Court addressed allegations similar to those here that claimed prison officials had "violated Barkes civil rights in failure to prevent his suicide."[48] Barkes was a "troubled man" with a known long history of mental health and substance abuse problems. When arrested he had disclosed to the prison officials "a history of psychiatric treatment and was on medication."[49] He disclosed to the prison officials that he had attempted suicide the year before and was placed in a single cell, he called his wife and told her he was going to kill himself, was observed by prison staff "awake and behaving normally . . . however, an officer arrived to deliver lunch and discovered that Barkes had hanged himself with a sheet."[50] The Supreme Court found no constitutional violation on these facts which are very similar to the facts alleged here.

The facts alleged in the Amended Complaint, and binding case law, dictate that Officer Cox "is not liable in his individual capacity because the subjective component of deliberate indifference is not satisfied: Ms. [Crane] did not produce evidence showing that [Officer Cox]

---

[48] *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015).
[49] *Id*.
[50] *Id*.

knowingly disregarded a risk of suicide."[51]

### III. Plaintiff has failed to allege a viable fourth claim under the Fourteenth Amendment against DCFS Director Platt and Juvenile Justice Director Burke.

Directors Platt and Burke are named as Defendants based on their supervisory capacities. They are not alleged to have had any relevant affirmative link, personal participation, or interactions with Brock Tucker. This Court has already held that with regard to "DCFS" Defendants "[t]o survive dismissal for failure to state a claim, a § 1983 claim must clearly state what each individual defendant did to violate Plaintiff's civil rights."[52] Similar to Defendant Cottle, who the Court dismissed, Plaintiff has not made sufficient factual allegations against Directors Platt and Burke.

Here, the claims against Directors Platt and Burke are tedious. Tucker was not in DCFS custody at the time he committed suicide and there is no allegation of any affirmative link to his suicide other than the fact that he spent time in the DCFS system as a juvenile. Both Directors Platt and Burke are supervisors but sued only in their individual capacities. "[A] plaintiff must allege facts showing an "affirmative link" between the actions of each defendant and the alleged constitutional violation."[53]

As this Court has already held, with regard to Defendant Cottle, who was considered a DCFS Defendant, "Plaintiff may not name an entity or individual as a defendant based solely on

---

[51] *Norman v. Randolph*, 597 F. App'x 988, 990 (10th Cir. 2015).

[52] *Crane v. Utah Dep't of Corr.*, 2017 WL 4326490, at *3 (D. Utah Sept. 28, 2017).

[53] *Jex v. Utah Cty.*, 2013 WL 869900, at *3 (D. Utah Mar. 7, 2013).

supervisory position. Plaintiff disregarded these tenets in drafting this claim against Defendant[s

Platt and Burke] and the claim is therefore dismissed."[54]   Similarly, the claims against Directors

Platt and Burke should be dismissed.

**IV. Plaintiff has failed to allege facts that state a viable fifth claim for relief against the Utah Department of Corrections for violation of the Americans with Disabilities Act (ADA).**

Initially, "[a]ssertions of medical malpractice or failure to provide medical treatment

generally do not rise to the level of an ADA or Rehabilitation Act violation."[55]  Courts "have

generally treated allegations that officials failed to prevent jail suicides as claims for failure to

provide adequate medical treatment."[56]  Here, just like in the *A.H. v. St. Louis* case, the complaint

alleges Tucker "could have enjoyed various benefits of jail life but for a lack of treatment and

adequate supervision and states he was not given appropriate medication, protection from

hazards, and security monitoring that would have prevented him from committing suicide."[57]

The Amended Complaint alleges Tucker could not properly take his medication or was at risk

because of his mental illness. (Docket No. 39, at ¶¶ 150-155). "These allegations are, in essence,

claims of inadequate medical treatment indistinguishable from the claims we held could not be

brought under the ADA[.]"[58]  The claims in the Amended Complaint do not allege ADA

---

[54] *Crane v. Utah Dep't of Corr.*, 2017 WL 4326490, at *3 (D. Utah Sept. 28, 2017) (citation omitted).
[55] *Ingram v. Clements*, 705 F. App'x 721, 726 (10th Cir. 2017) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)).
[56] *A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 729–30 (8th Cir. 2018).
[57] *Id.* at 730.
[58] *Id.*

violations.

Regardless, "[t]o state a claim for a violation under Title II of the ADA, a plaintiff must allege (1) that she is a qualified individual with a disability; (2) that she was excluded from the benefits or services of a public entity; and (3) that her exclusion was by reason of her disability."[59] Plaintiff must plausibly allege the State Defendants denied Tucker access to a prison program or discriminated against him *because of* his asserted disabilities.[60] "An individual is disabled if he has a physical or mental impairment that substantially limits one or more major life activities."[61] Here, there is no specific allegation that Tucker was a qualified individual with a disability and no specific allegation that he ever attempted to obtain ADA accommodations through the prison. Plaintiff's conclusory allegations do not make out an ADA violation, or claim.[62]

The Tenth Circuit has also held that intentional discrimination is required to qualify for compensatory damages under the ADA and the Rehabilitation Act.[63] There is no plausible allegation that the State Defendants had any ill intent with regard to the treatment and accommodations accorded to Tucker.

---

[59] *Meyers v. Colorado Dept. of Human Services*, 2003 WL 1826166 at *1 (10th Cir. 2003).
[60] *Catlin v. Salt Lake Cnty. Coll.*, 2010 WL 1236404, at *3 (D. Utah 2010), report and recommendation adopted, 2010 WL 1236407 (D. Utah 2010).
[61] *Phillips v. Tiona*, 508 F. App'x 737, 748 (10th Cir. 2013).
[62] *See Villa v. D.O.C. Dep't of Corr.*, 664 F. App'x 731, 734 (10th Cir. 2016).
[63] *See Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir.1999) (requiring proof of intentional discrimination for compensatory damages under these statutes).

## V. The law is not clearly established such that any State Defendant committed a knowing constitutional violation.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[64] "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."[65]

In 2015, in a prisoner suicide case brought under Section 1983, the Tenth Circuit held that "[w]e are not aware of any controlling Supreme Court or Tenth Circuit decisions that directly answer this clearly-established-law inquiry."[66] The *Cox* Court noted that the Supreme Court held that same year that "there was no clearly established "right" of an inmate to be adequately screened for suicide."[67] Many other prison suicide cases cited herein grant qualified immunity to prison officials under circumstances similar, or more egregious, than those alleged here. Thus, no clearly established law existed then that put the State Defendants "on fair notice that the described conduct was unconstitutional."[68]

---

[64] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).
[65] *al–Kidd*, 563 U.S. at 741 (we have "repeatedly told courts . . . not to define clearly established law at a high level of generality.").
[66] *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015).
[67] *Id.* (citing *Taylor v. Barkes*, 135 S. Ct. 2042 (2015)); *see also Miller v. Harbaugh*, 698 F.3d 956, 964–65 (7th Cir. 2012) ("the fact that more measures, or different measures, might have been undertaken, and that those measures might have been successful (though even this is not certain) is not enough to support liability under the Constitution against any of the defendants now before us.").
[68] *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

**VI.  Plaintiff has failed to allege facts that state a viable sixth claim for relief under the Utah Constitution Article I, Section 9 Unnecessary Rigor Clause.**

Article I, section 9 of the Utah Constitution states that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor."[69]  To establish a claim under the unnecessary rigor clause of the Utah Constitution, a plaintiff must show that a prisoner was subjected to unreasonably harsh, strict, or severe treatment, and that the prison official who subjected the plaintiff to such treatment acted voluntarily and with sufficient culpability to contravene the prisoner's right to be free from unnecessary rigor. Like an Eighth Amendment claim, an unnecessary rigor claim has an objective requirement and a subjective requirement. This Court has already stated the standard necessary to prove a claim under the unnecessary rigor clause, and that it requires a "flagrant violation" which Plaintiff has not alleged here.[70]

Here, as this Court has already held with regard to DCFS Defendants FTC and Cottle, and as would also apply to all State Defendants, "Plaintiff includes [State Defendants] in her unnecessary-rigor claim against without alleging they did anything."[71]  There are no factual allegations in the Amended Complaint that any State Defendant had any knowledge of any harm or unnecessary rigor to Tucker. "[C]onclusory statements devoid of supporting factual allegations [] are insufficient to support their claims."[72]

This Court relied on *Guerrero* and Judge Sam's sound reasoning, and that same

---

[69]  Utah Const. art. I § 9.
[70]  *Crane v. Utah Dep't of Corr.*, 2017 WL 4326490, at *3 (D. Utah Sept. 28, 2017).
[71]  *Id.*
[72]  *Id.*

reasoning applies to the State Defendants here. There are "[n]o supporting factual allegations reflect[ing] that [the State Defendants] alleged actions presented a substantial risk of serious injury to Mr. [Tucker] for which there was no reasonable justification."[73] The State Defendants are not alleged to have subjected Tucker to "circumstances previously identified as unnecessarily rigorous so as to constitute a flagrant violation."[74] There are "[n]o supporting factual allegations reflect[ing] that [the State Defendants'] alleged conduct was egregious and unreasonable[.] . . . presented an obvious and known serious risk of harm and that [they] acted without reasonable justification knowing that risk."[75] "Plaintiffs do not allege any custom or policy implemented by [any State Defendant] that played a role in Mr. [Tucker]'s death."[76]

With regard to Warden Bigelow, Dr. Garden, Director Platt, IDHO Taylor, and Director Burke, "[n]o supporting factual allegations reflect that [they] personally participated in the alleged unconstitutional conduct, or that there is a causal connection between [their] alleged action and the alleged deprivation."[77] With regard to Officer Cox, while he was on duty the day that Tucker committed suicide in his cell, there are no allegations of any conduct by Officer Cox that was a "flagrant violation" or that "violates clearly established constitutional rights of which a reasonable person would have known[.]"[78] The case law cited in this Memorandum clearly

---

[73] *Estate of Guerrero v. Crowther*, 2017 WL 1288565, at *4 (D. Utah Apr. 6, 2017).
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Estate of Guerrero v. Crowther*, 2017 WL 1288565, at *4 (D. Utah Apr. 6, 2017)

evidences this. "Because of these shortcomings, Plaintiffs' Utah Constitutional claim is subject to dismissal."[79]

## <u>Conclusion</u>

For the reasons argued herein, State Defendants Warden Bigelow, Dr. Garden, IDHO Taylor, Officer Cox, Director Platt, and Director Burke should be dismissed for lack of an affirmative link, or because qualified immunity applies to their arguable conduct. Also, the Utah Department of Corrections should be dismissed because no claim is stated under the ADA. Thus, Plaintiff's First Amended Complaint should be dismissed with prejudice.

DATED this 4th day of November, 2018.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Meb W. Anderson
MEB W. ANDERSON
Assistant Utah Attorney General
Attorney for the State Defendants

---

[79] *Id.* at 9-11.