**RANDALL W. RICHARDS (No. 4503)**
Richards & Brown
938 University Park Blvd #140
Clearfield, UT 84015
Telephone: (801) 773-2080
*lawyers@richardsbrownlaw.com*

**Emily A. Swenson (No. 12257)**
Emily A. Swenson, PC
2661 Washington Blvd., Suite 103
Ogden, Utah 84401
Telephone: (801) 409-0271
*easwensonatty@gmail.com*

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANET CRANE, as Administrator of the Estate of BROCK TUCKER,<br><br>        Plaintiff,<br><br>vs.<br><br>UTAH DEPARTMENT OF CORRECTIONS, ALFRED BIGELOW, RICHARD GARDEN, DON TAYLOR, OFFICER COX, BRENT PLATT, SUSAN BURKE, FUTURES THROUGH CHOICES, INC., UNIVERSAL HEALTH SERVICES, INC., and JEREMY COTTLE,),<br><br>        Defendant. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Case No. 2:16-CV-01103-DN<br>Judge: David Nuffer |

Plaintiff Janet Crane as administrator of the Estate of Brock Tucker, through counsel,

respectfully submits the following Memorandum in opposition to Defendant's Motion for

Judgment on the Pleadings.

/

/

## <u>LEGAL STANDARD</u>

The Defendants have filed a motion on behalf of the "State Defendants" for <u>Judgment on the Pleadings</u>. The standard for such a motion is high. In <u>*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)</u> the Court held,

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is *678 entitled to relief." As the Court held in <u>*Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929</u>, the pleading Robert standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

The Court explained further,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. (<u>*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)</u>)

The court will grant a motion for judgment on the pleadings only when the factual allegations in the complaint fail to "state a claim to relief that is plausible on its face," <u>*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)</u>.

The Defense has filed a motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Proceedings (FRCP), and therefore, pursuant to FRCP Rule 12(d), the motion is treated as a Motion for Summary Judgment under FRCP Rule 56. Under FRCP Rule 56(c)(1)(A) "A party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of material in the record".

## <u>RELEVANT FACTS IN THE AMENDED COMPLAINT</u>

Plaintiff has reviewed the defendants recitation of the relevant facts found in the Amended Complaint (<u>Docket 39</u>) and agrees that those particular facts are included in the Amended Complaint. Plaintiffs, however, would submit that list is woefully incomplete. The

defendants have listed 43 brief relevant facts covering a total of three pages of their memorandum. They ignore the vast majority of the 166 numbered allegations contained in 38 pages of the Plaintiffs 43 page Amended Complaint. Rather than listing the 166 paragraphs containing allegations supporting liability in a list of relevant fact for this memorandum, Plaintiffs refer to the Amended Complaint, and incorporate those allegations by such reference. These alleged relevant facts included in the Amended Complaint will be addressed below as applied to the specific claims made in the Defendant's Motion for Judgment on the Pleadings.

## ARGUMENT

### POINT I

**Plaintiff has properly and sufficiently alleged a viable claim for relief under the eighth amendment against Warden Bigelow and Dr. Garden and have linked their actions to alleged unconstitutional conduct.**

Plaintiff has made a claim against Defendants pursuant to 42 U.S.C.A. § 1983, which provided in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The standard to be applied in both jail and prison conditions § 1983 cases is the standard of "deliberate indifference." *Farmer v. Brennan, Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), ( *See* also, *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991)). A discussion by the Eleventh Circuit of what conduct is and is not deliberately indifferent can be found in *Hill v. DeKalb Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994).

In *Farmer*, the Supreme Court undertook to define and explain the term "deliberate indifference. " In that case, a transsexual inmate with feminine characteristics who was incarcerated with other males claimed to have been beaten and raped by another inmate. In his lawsuit, the inmate alleged that Wisconsin prison officials had acted with deliberate indifference to his safety in violation of the Eighth Amendment because they knew that the penitentiary had a violent environment and a history of inmate assaults and that he would be particularly vulnerable to sexual attack. The district court granted summary judgment in favor of the prison officials, and the Seventh Circuit affirmed. On review of the case by the Supreme Court, the Court was called upon to define the term "deliberate indifference. " In so doing, the Court referred to the subjective component of the inquiry:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. (*Farmer*, 114 S.Ct. at 1979).

Thus, in the case of inmate-on-inmate violence, as in other jail-related claims, the plaintiff must demonstrate that jail officials knew of a substantial risk of serious harm. "Deliberate indifference" requires that a deliberate choice be made to do or not to do something. Failing to act when the risk is not perceived is not deliberate and is not unconstitutional. In *Redmond v. Crowther*, 882 F.3d 927, 939-940 (10th Cir. 2018) the Court defined Deliberate Indifference to Serious Medical Needs as follows:

> "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish an Eighth Amendment claim based on inadequate medical care, the prisoner must prove both an objective component and a subjective component. *Self v. Crum*, 439 F.3d 1227, 1230–31 (10th Cir. 2006).

The objective component requires showing the alleged injury is "suftyious." *Id.* at 1230… The subjective component requires showing the prison official "knew [the inmate] faced a substantial risk of harm and disregarded that risk by failing *940 to take reasonable measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1088–89 (10th Cir. 2009). The subjective prong is met if prison officials "intentionally deny [ ] or delay[ ] access to medical care or intentionally interfere[ ] with the treatment once prescribed." *See Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285.

The deliberate indifference standard also is applied in cases involving jail or prison suicides. The plaintiff, a representative of the deceased inmate's estate, must show that the jail official displayed "deliberate indifference" to the prisoner's taking of his own life.  In *Cox v. Glanz,* 800 F.3d 1231, 1247–48 (10th Cir. 2015) the Court held,

Prison and jail officials, as well as the municipal entities that employ them, *1248 cannot "absolutely guarantee the safety of their prisoners." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.1999). Nonetheless, they "ha[ve] a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir.1990). "[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand Cty.*, 119 F.3d 862, 866 (10th Cir.1997). Therefore, such claims "must be judged against the 'deliberate indifference to serious medical needs' test."

A finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual. Under that criteria the Defendants are liable if the Plaintiff can establish that there was a known risk of suicide, the Defendants knew or reasonably should have known of the risk and ignored the risk. In analyzing this standard under the current Motion for Judgment on the Pleading, the Plaintiff agrees with the Defendants statement,

to avoid dismissal the complaint must plead sufficient facts, that when taken as true, provide "plausible grounds" that "discovery will reveal evidence" to support plaintiff's allegations.[1] "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."[2] (Defendant's Motion for Judgment on the Pleadings pg. 2)

---

[1] Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 556 (2007).
[2] Estate of Guerrero v. Crowther, 2017 WL 1288565, at *1 (D. Utah Apr. 6, 2017).

Under these legal standards, the Plaintiff respectfully submits the following analysis establishing the sufficiency of their pleadings.

### A. Claims against Warden Bigelow

Defendants claim Plaintiff has not alleged any relevant affirmatively, personal participation, or interactions with Tucker."[3] In fact, plaintiff have alleged "At all relevant times, Defendant Bigelow was responsible for the hiring and training of staff, and for the creation and oversight of policies, practices and customs regarding the mental health treatment of inmates, the disciplinary process, and the use of solitary confinement at CUCF during the period of time Brock was incarcerated at that facility." (Amended Complaint ¶ 8) Despite Defendants' claim, Warden Bigelow was responsible for the CUCF facility and despite Defendants' claim that Warden Bigelow had no personal knowledge or interaction with Brock[4], there is no evidence to that effect, and Plaintiff has in fact alleged that Bigelow was aware that CUCF subjected inmates, including Brock, to extremely disproportional punishments and repeated use of solitary confinement depriving them of human dignity, sanity, and inflicted emotional distress, loneliness and failed to treat mentally ill inmates.[5] Furthermore, plaintiff alleges that CUCF policy regarding outpatient care disciplinary actions was in effect during the relevant period of time, and Warden Bigelow was the one responsible for that procedure to implement and see that it was carried out.[6] The Amended Complaint also alleges Warden Bigelow, as one of the CUCF defendants, was liable for deprivation of Brock's eighth amendment constitutional rights, and that he perpetrated, encouraged and/or approved the acts and omissions alleged herein, knowing

---

[3] Defendants Motion for Judgment on Pleadings pg. 10
[4] Defendants Motion for Judgment on Pleadings pg. 10.
[5] Amended Complaint paragraph 8.
[6] Amended Complaint paragraphs 65-67.

that he was in violation of Brock's constitutional rights.[7]

Additionally, Plaintiff claims that each of the CUCF defendants (Alfred Bigelow, Richard Garden, Don Taylor and Officer Cox) acting in their individual capacities were liable for Brock's constitutional deprivations. The plaintiff further alleges that the "CUCF defendants perpetrated, encouraged and/or approved of the acts and omissions alleged herein and knew that such conduct was unjustified and was in violation of Brock's constitutional rights"… and the acts and omissions of the CUCF and defendants were the direct and proximate cause the death of Brock in that the CUCF defendants caused, and failed to prevent, the occurrence of constitutional violations suffered by Brock.[8]

The Plaintiff further claims with regards to Warden Bigelow that "CUCF defendants acts and omissions were especially egregious, given CUCF defendants knew it would cause or exacerbate Brock's well-documented brain damage, severe mental illness, mental anguish, helplessness, depression, anxiety, and suicidal tendencies, and the Brock's conduct for which he was being punished by the CUCF defendants and placed in isolation was a product of his brain damage, low IQ, and mental illness.[9] Plaintiff also alleges that CUCF defendants infliction of significant psychological and physical harm constitutes an intolerable practice in modern society and violates the Eighth Amendment to the United States Constitution.[10]

Plaintiff alleges that all the CUCF defendants were aware of the deprivation suffered by Brock and have been deliberately indifferent to his needs. Plaintiffs further allege that it should have been obvious to the CUCF defendants and to any reasonable person that the conditions imposed on Brock would cause tremendous anguish, suffering, pain, and a much higher risk of

---

[7] Amended Complaint paragraphs 73 - 77.
[8] Amended Complaint paragraphs 73- 77.
[9] Amended Complaint  paragraphs 81-82.
[10] Amended Complaint paragraphs 83-84.

suicide. Moreover, the CUCF defendants were aware that Brock was already suffering from mental illness, the Brock and repeatedly complained he was being mistreated by staff and that Brock was experiencing significant and lasting injury.[11]

Plaintiff alleged in the Amended Complaint that Brock was sentenced to prison in August 2012 and on September 15, 2012 he entered prison as a 17-year-old he was shortly thereafter transferred to the CUCF facility. He never left that facility, and during his stay up until the time of his death on October 2, 2014, he was sentenced to punitive isolation for over 154 days. During this time, he was also seen by Dr. Bruce Burnham for medical and mental illness, and was diagnosed with significant mental health illnesses and was prescribed psychological medications. He was also seen by a social worker and filed grievances regarding his mistreatment at the prison. CUCF defendants including Warden Bigelow oversaw that facility and knew of his mental health diagnosis and his grievances yet failed to act in any reasonable way remedy these issues.[12]

Further Warden Bigelow  was aware of or should have been aware of his own CUCF Policy "FD18/12.03"  which  provides: "Procedure: Outpatient Care Disciplinary Action: When disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness."[13] Despite this knowledge, the Amended Complaint alleges Warden Bigelow failed to do his duties of following up on this matter and allowed the punitive isolation to occur on numerous occasions including the last one in which Brock committed suicide.[14]

---

[11] Amended Complaint paragraphs 88-89.
[12] Amended Complaint paragraphs 43- 64.
[13] Amended Complaint paragraph 65.
[14] Amended Complaint paragraphs 66-68.

Contrary to the defendants' motion for judgment on the pleadings, plaintiff did in fact "identify a policy Warden Bigelow promulgated, created, implemented or possessed responsibility for which may have led directly or indirectly to [Brock] Tucker's death".[15]

### B. Claims against Dr. Garden

Defendants claim Plaintiff has not alleged any relevant affirmatively, personal participation, or interactions with Tucker."[16] In fact, plaintiffs have alleged "At all relevant times, Dr. Garden was the Director of the Clinical Services Bureau for the Utah Department of Corrections. As the Director, along with Defendant Bigelow, Garden was responsible for the oversight and control over the policies and procedures for medical and mental health treatment at CUCF. Garden had the responsibility to manage, oversee, create policy for, and administer such policies and procedures at CUCF, relating to treating mentally ill inmates, including Brock. Garden was also responsible for hiring, administering, supervising and training employees and contractors who attended to inmates with medical and mental health problems. Garden is being sued in his individual capacity. (Amended Complaint ¶ 9) Despite Defendants claim, Dr. Garden was responsible for all medical and psychological responsibilities at the CUCF facility and despite defendants claim that Dr. Garden had no personal knowledge or interaction with [Brock] Tucker[17], there is no evidence to that effect and Plaintiff has in fact alleged but Dr. Garden was aware that CUCF subjected inmates including brought to extremely disproportionate of punishments and repeated use of solitary confinement, and inflicted emotional distress loneliness and failed to treat his mentally ill inmates.[18] Furthermore, plaintiff alleges that CUCF policy regarding outpatient care disciplinary actions was in effect during the

---

[15] Defendants Motion for Judgment on Pleadings pg. 10.
[16] Defendants Motion for Judgment on Pleadings pg. 10.
[17] Defendants Motion for Judgment on Pleadings pg. 11.
[18] Amended Complaint paragraph 11.

relevant period of time, and Dr. Garden was the one responsible for that procedure to implement and see that it was carried out.[19] The Amended Complaint also alleges that Dr. Garden, as one of the CUCF defendants, was liable for deprivation of Brock's eighth amendment constitutional rights, and that he perpetrated, encouraged and/or proved the acts or admissions alleged herein, and knew that such conduct was unjustified and was in violation of Brock's constitutional rights.[20]

Additionally, Plaintiff claims that each of the CUCF defendants (Alfred Bigelow, Richard Garden, Don Taylor and Officer Cox) acting in their individual capacities are liable for Brock's constitutional deprivations. The plaintiff further alleges that the "CUCF defendants perpetrated, encouraged and/or approved of the acts and omissions alleged herein, and knew that such conduct was unjustified and was in violation of Brock's constitutional rights"… and the acts and omissions of the CUCF at defendants were the direct and proximate cause the death of Brock in that the CUCF defendants caused, and failed to prevent, the occurrence of constitutional violations suffered by Brock.[21]

The Plaintiff further claims with regards to Dr. Garden that "CUCF defendants' acts and omissions were especially egregious, given CUCF defendants knew it would cause or exacerbate Brock's well-documented brain damage, severe mental illness, mental anguish, helplessness, depression, anxiety, and suicidal tendencies, and the Brock's conduct for which he was being punished by the CUCF defendants and placed in isolation was a product of his brain damage, low IQ, and mental illness.[22] Plaintiff also alleges that CUCF defendants infliction of significant

---

[19] Amended Complaint paragraphs 65-67.
[20] Amended Complaint paragraphs 73 - 77.
[21] Amended Complaint paragraphs 73- 77.
[22] Amended Complaint paragraphs 81-82.

psychological and physical harm constitutes an intolerable practice in modern society and violates the eighth amendment to the United States Constitution.[23]

Plaintiff alleges that all the CUCF defendants were aware of the deprivation suffered by Brock and have been deliberately indifferent to his needs. Plaintiff further alleges that it should have been obvious to the CUCF defendants and to any reasonable person that the conditions imposed on Brock would cause tremendous anguish, suffering, pain, and a much higher risk of suicide. Moreover, the CUCF defendants were aware that Brock was already suffering from mental illness, the Brock and repeatedly complained he was being mistreated by staff and that Brock was experiencing significant and lasting injury.[24]

Plaintiff alleged in the Amended Complaint that Brock was sentenced to prison in August 2012 and on September 15, 2012 he entered prison as a 17-year-old he was shortly thereafter transferred to the CUCF facility. He never left that facility, and during his stay up until the time of his death on October 2, 2014, he was sentenced to punitive isolation for over 154 days. During this time, he was also seen by Dr. Bruce Burnham for medical and mental illness and was diagnosed with significant mental health illnesses and was prescribed psychological medications. He was also seen by a social worker and filed grievances regarding his mistreatment at the prison. CUCF defendants including Dr. Garden oversaw that facility and knew of his mental health diagnosis and his grievances yet failed to act in any reasonable way remedy these issues.[25]

Further Dr. Garden was aware of or should have been aware of the CUCF Policy "FD18/12.03" which provides: "Procedure: Outpatient Care Disciplinary Action: When disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or

---

[23] Amended Complaint paragraphs 83-84.
[24] Amended Complaint paragraphs 88-89.
[25] Amended Complaint paragraphs 43-64.

not the behavior was due to mental illness."[26] Despite this knowledge, the Amended Complaint alleges Dr. Garden failed to do his duties of following up on this matter and allowed the punitive isolation to occur on numerous occasions including the last one in which [Brock] committed suicide.[27]

It is presumed and alleged in the Amended Complaint that as the acting medical director of the CUCF facility Dr. Garden was aware of the state of psychological issues regarding prison and suicide. Specifically, plaintiff alleged in the Amended Complaint as follows:

> CUCF Defendants' acts and omissions violated contemporary standards of human dignity and decency as evidenced by the fact that Utah has the highest number of prison inmate suicides nationally, with that number exponentially growing during the time of Brock's incarceration and suicide.
>
> The unconstitutionality of the CUCF Defendants' acts and omissions with respect to Brock is also evidenced by the international community's condemnation of the practice of prolonged and indefinite solitary confinement under very harsh and stifling conditions, such as those that existed at CUCF. Such condemnation is reflected in international treaties such as the Convention Against Torture, the International Covenant on Civil and Political Rights, decisions and declarations of international bodies, customary international law, and decisions of regional and national courts, such as the European Court of Human Rights and Canadian courts. The outrageousness and illegality of holding Brock in isolation for extended periods of time, and the significantly higher risk of suicide because of that isolation, was at all relevant times reflected in easily-accessible literature, including the following: Metzner, J. & Fellner, J., "Solitary Confinement and Mental Illness in U.S. Prisons: A Challenge for Medical Ethics," J Am Acad Psychiatry Law 38:1:104–108 (March 2010); Reyes, H., "The worst scars are in the mind: psychological torture," Int. Rev. Red Cross 89:591–617 (2007); Basoglu, M, Livanou, M., Crnobaric, C., "Torture vs. other cruel, inhuman and degrading treatment: is the distinction real or apparent?" Arch Gen Psychiatry 64: 277–85 (2007); Smith, PS: The effects of solitary confinement on prison inmates: a brief history and review of the literature," Crim. Just. 34:441–568 (2006); Abaramsky, S. & Fellner, J., "Ill-equipped: US prisons and offenders with mental illness," Human Rights Watch, 145–68 (2003); White, T., Schimmel, D., Frickey, R., "A comprehensive analysis of suicide in federal prisons: a fifteen-year review," J. Correct. Health Care 9:321–43 (2002).[28]

The plaintiff has alleged Dr. Garden was the individual responsible for the medical and mental health treatment at the CUCF facility and as such had knowledge or intentionally turned a

---

[26] Amended Complaint paragraph 65.

[27] Amended Complaint paragraphs 66-68.

[28] Amended Complaint paragraphs 86-87.

blind eye to the continual and excessive abuses at the facility. There is no question that this constitutes deliberate indifference as set forth in the plaintiff's Amended Complaint. Specifically, paragraph 88 of that complaint states "CUCF defendants were aware of all the deprivation suffered by Brock and have condone them and have been deliberately indifferent to Brock's needs." Paragraphs 89 through 100 allege that Dr. Garden breached his duty as the medical director the facility and this deliberate indifference to Brock's needs constituted a violation of his constitutional rights as set forth in the Amended Complaint.

Some of the allegations in the Amended Complaint with regards to Dr. Garden include, citing to the Amended Complaint paragraphs.

¶ 88. CUCF Defendants were aware of all the deprivations suffered by Brock and have condoned them and have been deliberately indifferent to Brock's needs.

¶ 89. It should have been obvious to the CUCF Defendants and to any reasonable person that the conditions imposed on Brock would cause tremendous mental anguish, suffering, pain, and a much higher risk of suicide. Moreover, the CUCF Defendants were aware that Brock was already suffering from mental illness, that Brock had repeatedly complained he was being mistreated by staff, and that Brock was experiencing significant and lasting injury. CUCF Defendants were deliberately indifferent to Brock's tremendous anguish, pain, suffering, and increased risk of suicide.

¶ 90. CUCF Defendants knew that, as a result of being placed in isolation, there was a strong likelihood that Brock was in danger of serious personal harm, including self-harm and suicide.

¶ 91. CUCF defendants own at least the following duties to Brock.

    a. to ensure that Brock, who was subjected to institutional discipline for minor offenses and was suffering from mental illness and disabilities, was not deprived of

basic human needs, including, but not limited to, human contact, environmental and sensory stimulation, attention to mental and physical health, physical exercise, sleep, nutrition, and meaningful activity;

b. to ensure Brock's safety;

c. to ensure that Brock was given the proper medical and mental health care;

d. to ensure that Brock was provided a level of health care that a civilized society would think necessary;

e. to conduct an appropriate and complete suicide assessment;

f. to create and implement an appropriate mental health treatment plan;

g. to follow clinical judgments and recommendations;

h. to promptly evaluate Brock, who was gravely disabled and at risk of serious harm, and transfer him to a psychiatric hospital; and

i. to take precautions to prevent Brock's suicide.

92. Defendants breached these duties and were deliberately indifferent to Brock's needs in at least the following particulars:

Repeatedly placing Brock in prolonged isolation thereby exposing an extremely disproportionate punishment without legitimate penological interest for infractions that were minor and nonviolent. Failing to ensure that Brock was provided with a level of care that a civilized society would think necessary. Failing to intervene and prevent Brock's death by suicide.

¶ 94. Defendants' acts and omissions as alleged herein, including, but not limited to, their failure to provide Brock with medical or psychiatric care and/or to take other measures to protect him from physical, emotional, and mental harm and to prevent his attempting suicide after notice

of his psychiatric condition, and while being held in isolation, constituted deliberate indifference to Brock's serious medical needs, health and safety.

¶ 95. As a direct and proximate result of CUCF Defendants' conduct and omissions, Brock experienced physical pain, severe emotional distress and mental anguish, deep depression, crushing loneliness, as well as the loss of his life and other damages alleged herein.

¶ 96. Considering Brock's brain damage and an extremely low IQ, coupled with a current and ongoing diagnosis of major depressive disorder and unspecified psychosis, and the crushing psychological impact of prolonged isolation, Brock's death was manifestly foreseeable.

Contrary to the defendant's motion for judgment on the pleadings, plaintiff did in fact "allege [] facts showing that Dr. Garden had any personal knowledge of or interaction with Tucker or that he knew there was a substantial risk that Tucker might attempt suicide. ".[29]

# POINT II

**Plaintiff has adequately alleged a viable first, second, and third claim for relief under the eight amendment against hearing Officer Don Taylor and Officer Cox.**

Defendant generally argues that the claims against officers Taylor and Cox should be dismissed because they are entitled to qualified immunity. This argument apparently is based on a claim that plaintiff's allegations were that "CUCF, that "[i]n essence, this [Complaint] amounts to an argument that the CUCF guards and disciplinary officers had a constitutional obligation to perform psychological screening of the plaintiff. There is no such constitutional obligation".[30]

---

[29] Motion for Judgment on Pleadings pg. 11.
[30] Motion for Judgment on Pleadings pg. 11-12 (citing, *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992)).

Plaintiff would submit that Defendant has misread the *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992).[31] Defendant contends that *Graham* somehow expands qualified immunity to any correctional officer that does not have a degree in psychology. That is not the holding of that case nor are the facts similar to the case at bar. In *Graham*, the Court dismissed the claims because the plaintiff failed to establish "two elements (1) objectively, the plaintiff had serious medical needs and (2) subjectively, the defendants were deliberately indifferent to those serious medical needs"[32]. In the case at bar Plaintiff has clearly alleged both elements. It is instructive to note the court's reasoning in *Graham* with regards to these two elements. In *Graham*, the court states as follows,

> A medical need is objectively serious when a physician has diagnosed the need as demanding treatment or when the medical need is so obvious that even a lay person would recognize the need for treatment. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981); *Gomm v. DeLand*, 729 F.Supp. 767, 778 (D.Utah 1990). The plaintiff, however, has not alleged that he was diagnosed as manic depressive prior to this incident and raging is not so obvious that a reasonable lay person would recognize the need for treatment. Objectively, the plaintiff has not presented facts which would show he had a serious medical need. Assuming manic depression to be a serious medical need, the second prong should be explored.
>
> Moreover, there is no showing that any defendant was deliberately indifferent to the plaintiff's medical needs. The plaintiff was raging and the officers on the scene needed to quell the disturbance. Following this interlude, the plaintiff was punished for the disturbance. Rather than alleging that the defendants were deliberately indifferent to a serious medical need, plaintiff has alleged that the defendants were negligent in failing to notice his psychological condition and negligent in assessing the effect of their decisions upon his psychological condition. This does not amount to a violation of the eighth amendment, since a misdiagnosis or an inadvertent medical mistake is not a constitutionally cognizable claim. *Estelle*, 429 U.S. at 106; *McCracken v. Jones*, 562 F.2d 22, 25-26 (10th Cir.1977).(*Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992)).

---

[31] This is an unpublished opinion, and thus counsel has an obligation to notify the Court of the nature of the opinion. Plaintiff cites this case simply in response to the Defendant's citation and claim that this establishes legal precedent that defendants Cox and Taylor have qualified immunity.

[32] *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992).

In the case at bar, plaintiff does not allege that defendants Cox and Taylor needed to observe Brock or make a psychological diagnosis. Rather, the psychological diagnosis together with the risk of suicide and the attending visits to doctors was well known to both officers. Furthermore, CUCF Policy "FD18/12.03" provides: "<u>Procedure: Outpatient Care Disciplinary Action</u>, when disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness."[33] The Amended Complaint alleges that the Prison Dr. notified the inmate disciplinary hearing officer pursuant to that procedure that Brock had a mental illness with suicidal ideations. It is further alleged that Officer Taylor (IDHO) received these notices. Despite this knowledge, the Amended Complaint alleges officer Taylor failed to do his duty of following up on this matter and allowed the punitive isolation to occur on numerous occasions including the last one in which Brock committed suicide.[34]

It is further alleged the defendant Cox knew and should have known, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis, and major depressive disorder; that Brock was under treatment for these conditions; and that prolonged periods of isolation tortured Brock and would cause or exacerbate severe mental illness, mental anguish, helplessness, depression, anxiety, insanity, and suicidal tendencies.[35] The Amended Complaint alleges that "on the day of Brock's death defendant Cox should have known, and did not know that Brock was a significantly increased suicide risk."[36]

The Amended Complaint also alleges that "on the day of Brock's death Defendant Cox, acting with deliberate indifference and in violation of prison policy, entered Brock's isolation

---

[33] <u>Amended Complaint</u> paragraph 65.
[34] <u>Amended Complaint</u> paragraphs 102-108.
[35] <u>Amended Complaint</u> paragraph 114.
[36] <u>Amended Complaint</u> ¶ 115.

cell alone, got into a verbal altercation with Brock, and refused to allow Brock out of his cell

that day for exercise, all of which foreseeably and proximately caused Brock to lose his life by

suicide.[37] Additionally, the Amended Complaint alleges that Defendant Cox, again acting with

deliberate indifference, failed to monitor Brock to prevent his suicide even when put on notice

of the possibility of a suicide attempt when Brock hung a towel over the window of his cell

prior his suicide.[38] The Amended Complaint specifically alleges that defendant Cox's actions

and deliberate indifference deprived Brock of his rights under the eighth amendment due to his

loss of life.[39]

### A. IDHO Taylor's sentence to Brock with Punitive Isolation was done in violation of the eighth amendment.

Defendant argues "The claim here appears to be that punitive isolation is on its face an

Eighth Amendment violation. But deliberate indifference requires actual misconduct. Sentencing

inmates to punitive isolation is not deliberate indifference.[40] In *Farmer v. Brennan*, 511 U.S.

825, 828–29, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994), the Supreme Court of the United

States held,

> A prison official's "deliberate indifference" to a substantial risk of serious harm to
> an inmate violates the Eighth Amendment. See *Helling v. McKinney,* 509 U.S. 25,
> 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct.
> 2321, 115 L.Ed.2d 271 (1991); *829 *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285,
> 50 L.Ed.2d 251 (1976).

The Court went further to set forth the requirements for an Eighth Amendment violation.

This is a two-step analysis with the first step requiring, "the deprivation allege must be

objectively sufficiently serious," and must result in the denial of a minimal civilized major of

life's necessities", and finally "the inmate must show he is incarcerated under conditions posing

---

[37] Amended Complaint ¶ 116.
[38] Amended Complaint ¶ 117.
[39] Amended Complaint ¶ 118.
[40] Motion for Judgment on Pleadings pg. 12.

a substantial risk of serious harm." (*Id. at 834*) The second requirement under *Farmer* in showing a violation of the cruel and unusual punishments clause, "a prison official must have a sufficiently culpable state of mind." The Court goes further to state "in prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety." (*Id. at 834*)

As set forth in Point II above, the Amended Complaint specifically alleges that Officer Taylor knew of the prison policy, was also informed on several occasions of Brock's severe mental health issues and his high risk of suicide, and yet in violation of policy issued a series of punitive isolation punishments and did so with deliberate indifference to Brock's serious mental health conditions and in direct contravention of recommendations from Brock's mental health treatment providers.[41] Defendants' reliance on *Deloney v. Cty. of Fresno*, No. 117CV01336LJOEPG, 2018 WL 3388921, at \*6 (E.D. Cal. July 11, 2018) is misplaced since in that case, "there are no allegations that indicate any Corizon [prison] employee was aware of a substantial risk of serious harm to Mayberry prior to the alleged July 4 suicide attempt". The court goes further to state the plaintiff failed to "specifically identify a Corizon policy or custom. (*Id at 7.*) In the case at bar, however, the plaintiff alleges in the Amended Complaint that Officer Taylor was aware of the substantial risk of harm to Brock in the punitive isolation environment, and yet placed him in said environment and failed to watch over him and said environment in contravention of the specifically alleged prison policy[42]. The Amended Complaint specifically alleges that these failures constitute deliberate indifference on the part of Defendant Taylor. Specifically, the Amended Complaint alleges, "Defendant Taylor should have known, and did know, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis and major depressive disorder and was under treatment for these

---

[41] Amended Complaint ¶ 104.
[42] *See* CUCF Policy "FD18/12.03" as described above.

conditions at the time Defendant Taylor imposed back-to-back sentences of 20 days in punitive isolation."[43] Plaintiffs complaint also includes allegations of deliberate indifference for "failing to follow policies", "showing deliberate indifference to Brock serious mental health conditions, and placing "Brock in punitive isolation was likely to and did cause or exacerbate Brock's severe mental illness etc. [44]" Additionally, plaintiffs alleges that due to the above, the defendant knew "the crushing psychological impact to prolonged isolation and Brock's death was manifestly foreseeable."[45]

### B. Officer Cox was deliberately indifferent to a known and obvious risk of suicide.

Defendants base this entire claim on an allegation that Plaintiff's pleadings are deficient. Specifically, the Defendant states,

> There are no specific allegations that indicate that Officer Cox deliberately ignored a known risk of suicide. Many of the cases addressing prison suicides involve inmates who are new or unknown to the prison officials and unknown or undiagnosed mental health problems. Here, to defeat a claim of qualified immunity Plaintiff must show that Officer Cox had "a particularized state of mind: actual knowledge by a prison official of an individual inmate's substantial risk of suicide." Plaintiff can "only succeed on this species of claim by presenting facts suggesting that the facility staff had knowledge of the specific risk that the deceased inmate would commit suicide.[46]

Contrary to Defendant's motion for judgment on the pleadings, the Plaintiff has made specific allegations against Defendant Cox. First plaintiff alleges "Defendant Cox knew and should have known, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis, and major depressive disorder; that Brock was under treatment for these conditions; and that prolonged periods of isolation tortured Brock and would cause or exacerbate severe mental illness, mental anguish, helplessness, depression, anxiety,

---

[43] Amended Complaint ¶ 103.
[44] Amended Complaint ¶ 103, 104, 105.
[45] Amended Complaint ¶ 107.
[46] Motion for Judgment on Pleadings pg. 14.

insanity, and suicidal tendencies."[47] Furthermore, Plaintiff states that "[o]n the day of Brock's death Defendant Cox should have known and did know that Brock was a significantly increased suicide risk."[48] Plaintiff further alleges that with deliberate indifference d=Defendant Cox entered Brock cell alone and got into a verbal altercation with Brock, and refused to allow him out for the day. Plaintiff also alleges that Defendant Cox, again acting with deliberate indifference, failed to monitor Brock to prevent his suicide even when put on notice of the possibility of a suicide attempt when Brock hung a towel over the window of his cell prior his suicide."[49]

In *Farmer v. Brennan*, 511 U.S. 825, 828–29, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994), the Supreme Court of the United States held,

> A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *829 *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The Court went further to set forth the requirements for an Eighth Amendment violation. This is a two-step analysis with the first step requiring, "the deprivation allege must be objectively sufficiently serious," and must result in the denial of a minimal civilized major of life's necessities", and finally "the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm." (*Id. at 834*) The second requirement under *Farmer* in showing a violation of the cruel and unusual punishments clause, "a prison official must have a sufficiently culpable state of mind." The Court further states, "in prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety." (*Id. at 834*)

---

[47] Amended Complaint ¶ 114.
[48] Amended Complaint ¶ 115.
[49] Amended Complaint ¶ 117.

As set forth in Point II above, the Amended Complaint specifically alleges that Officer Cox acted in specific instances and with specific knowledge in deliberate indifference to Brock's health or safety.[50]

Defendants again cite the unpublished decision of *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992), stating that, "claims a verbal exchange between himself and some of the defendants triggered a 'psychotic episode'" establish that a verbal argument between an inmate and a guard does not constitute a actionable eighth amendment claim. Again, Defendants failed to set forth the entirety of the allegations contained in the Amended Complaint. As set forth above, Plaintiff specifically allege that Officer Cox should have known and knew of his severe mental health condition based on extensive records of medical reports prior to and during incarceration at the prison. The Amended Complaint alleges Officer Cox knew that isolation would trigger suicide and was informed of imminent suicide when Brock placed a towel over the window of his isolation cell, yet Defendant Cox failed to act in deliberate indifference to the safety and life of Brock Tucker. These allegations go far beyond the facts in the Graham decision, where the inmate was brand-new and none of the officers had any idea of his mental health condition or the effect punitive isolation would have on said condition.

Defendants rely on the case of *Taylor v. Barkes*, 135 S. Ct. 2042, 2043, 192 L. Ed. 2d 78 (2015), to support their contention that failure to put an inmate on suicide watch does not constitute an Eighth Amendment constitutional violation. That case, however, dealt with whether the failure to adequately and accurately implement intake suicide screening. The facts of that case were that a nurse screened the deceased using a standard protocol for suicide screening listing 17 suicide risk factors. According to the assessment tool if an individual indicated on at least eight of the 17 factors, suicide watch would be implemented. In Taylor, the deceased

---

[50] Amended Complaint paragraphs 118-119.

indicated on only two factors, and therefore the defendant would not have known of the substantial risk of significant harm. The Supreme Court stated,

> "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. (*Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015)*)

Defendants failed to cite controlling case of *Farmer v. Brennan*, 511 U.S. 825, 828–29, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994), where the Supreme Court of the United States held, "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." In the case at bar however, plaintiff alleges that there had been numerous evaluations of Brock Tucker, and the risk of suicide and other mental health issues was clearly identified and obvious. Defendant Cox's intentional ignoring of that information constitute the deliberate indifference required to establish eighth amendment liability.

## POINT III

### Plaintiff has failed to allege a viable fourth claim under the Fourteenth amendment against DCFS Director Platt and Juvenile Justice Burke.

Plaintiff capitulates with regards to the issues raised against DCFS Director Platt and Juvenile Justice Director Burke.

## POINT IV

### Plaintiff has adequately alleged sufficient facts that state a viable fifth claim for relief against the Utah Department of Corrections for violation of the Americans with Disabilities Act (ADA).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 3(2) of the ADA defines "disability" to mean:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or,
(C) being regarded as having such an impairment. (42 U.S.C. § 12102(2)).

Further, 42 U.S.C.A. § 12133 provides, "The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

In *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 208-12 (1998), the Court held that the ADA applied in the prison context. Furthermore, Congress clearly expressed an intent under Title II of the ADA to abrogate the States' Eleventh Amendment Immunity. In this regard, the ADA provides, "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." (42 U.S.C. § 12202).

The defense appears to be claiming that in order to prevail the Plaintiff needs to have a specific intent to discriminate, rather than to have an intent to do acts which resulted in discrimination. To support that claim, they cite *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1152 (10th Cir. 1999). "Thus the only question is whether Mr. Powers had to prove intentional discrimination to receive an award of compensatory damages.[6] The answer is yes" they fail however to acknowledge footnote 6 states, "Wyo Tech seems to equate its version of

intent with the specific intent to discriminate rather than an intentional commission of an act that *results* in discrimination. There have been a wide variety of views on this subject". (*Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999)).

A careful reading of *Powers* however would say differently. While the Plaintiff agrees that there needs to be an intentional act which results in discrimination, Plaintiff does not need to prove a malicious intent to discriminate for discrimination purposes. In *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999), the Court stated,

> In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy ... [or] custom. (citing *Bartlett v. New York State Bd. of Law Examiners,* 156 F.3d 321, 331 (2d Cir.1998).

A review of the Amended Complaint in the present case shows ample evidence where the Plaintiff as alleged intentional discrimination on the part of the Department of Corrections under the Americans With Disabilities Act. The complaint alleges "UDC knew that Brock's serious mental impairments predated his incarceration at CUCF. Thus, he was disabled, as defined by the ADA, and a handicapped individual, as defined by the Rehabilitation Act. UDC incarcerated Brock in its CUCF facility. Thus, he was a qualified individual for the purposes of both statutes. [51] Further, the complaint alleges "The provision of housing is undoubtedly a program, service, or activity of any incarceration facility, including CUCF. Because it incarcerates people and controls every aspect of their lives, UDC has a responsibility to make reasonable accommodations to provide safe housing for disabled inmates even if accommodations are not expressly requested."[52]

---

[51] Amended Complaint paragraph 150.
[52] Amended Complaint paragraph 151.

The next paragraph provides, "UDC's employees and/or agents reviewed Brock's personal and medical history. UDC "knew that Brock had brain damage, a low IQ, impulse control disorder, unspecified psychosis, and major depressive disorder. UDC knew these mental impairments substantially limited Brock's major life activities, including his abilities to care for himself, learn, concentrate, work, and think. Brock previously attempted suicide, and UDC knew he presented a serious risk of suicide while incarcerated."[53]

The complaint goes on to allege, "Despite this knowledge, UDC excluded Brock from, and denied him participation in, its programs, services, and activities, and discriminated against Brock because of his disability by failing to make reasonable accommodations for him to be able to take his medications as prescribed, disciplining him for his disability-related behavior, housing him in conditions that endangered him – locking him in a solitary cell with an obvious tie-off point and a hanging implement – and, finally, failing to carefully monitor him or equip its staff with training, polices, or procedures to make the accommodations needed to keep Brock safe."[54]

The next paragraph specifically alleges intentional discrimination and/or deliberate indifference with regards to failing to accommodate under the ADA. That paragraph reads as follows:

> Theses failures constitute discrimination solely by reason of disability because UDC knew of Brock's serious mental impairments and resulting limitations, and knew those limitations required accommodations to ensure the proper administration of his medication, to not subject Brock to disciplinary measures because of his disability, and to make his housing conditions as safe as that afforded to non-disabled inmates, yet failed to take such measures. In fact, UDC repeatedly punished Brock for his disability-related behavior by continually locking him in solitary cells because of his conduct. Thus, the failures to reasonably accommodate Brock's known disability-related needs were the result of either intentional decisions, or decisions made with deliberate indifference to the increased risk of substantial harm to Brock, and ultimately caused his death. [55]

---

[53] Amended Complaint paragraph 153.
[54] Amended Complaint paragraph 154.
[55] Amended Complaint paragraph 155.

**POINT V**

**The law is clearly established to put any State Defendant on notice that the conduct committed against Brock Tucker was a knowing constitutional violation.**

Point V of the Defendant's motion for judgment on the pleading is somewhat confusing. They claim that there is not clearly established law to establish any State Defendant committed a knowing constitutional violation. They then begin citing case law that has to do with a Section 1983 action, which the Plaintiff does not dispute precludes an action against State Defendants in their official capacity. The Amended Complaint alleges that four State Defendants are being sued pursuant to 42 USC §1983 in their individual capacities, and that in their individual capacities they and each of them violated Brock's constitutional rights.[56] In *Redmond v. Crowther*, 882 F.3d 927, 939-940 (10th Cir. 2018) the Court defined Deliberate Indifference to Serious Medical Needs as follows: "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. The Supreme Court of the United States, in *Farmer v. Brennan, Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), set the standard to be applied in both jail and prison conditions § 1983 cases as the standard of "deliberate indifference." This issue has been addressed and discussed in detail in Points I & II above, and rather than restating those arguments, Plaintiff incorporates them by reference in this issue.

The Defendants then claims, "there is no clearly establish right of an inmate to be adequately screen for suicide."[57] As discussed in Points I & II above, Plaintiffs are not alleging that the defendants violated the right of an inmate to be adequately screened for suicide. Instead, plaintiffs are alleging that Brock Tucker was screened for suicide on numerous occasions, that all

---

[56] Amended Complaint page 19.
[57] Motion for Judgment on Pleadings page 22.

the state defendants in their individual capacity were aware of his suicide risk and deliberately ignored that risk, thus constituting an Eighth Amendment claim under section 1983.

Defendants then claim that no clearly established law existed that put the state defendants on fair notice of that the described conduct was unconstitutional.[58]  As set forth in Point I above, in *Cox v. Glanz,* 800 F.3d 1231, 1247–48 (10th Cir. 2015) the Court held,

> Prison and jail officials, as well as the municipal entities that employ them, *1248 cannot "absolutely guarantee the safety of their prisoners." *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir.1999). Nonetheless, they "ha[ve] a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Berry v. City of Muskogee,* 900 F.2d 1489, 1499 (10th Cir.1990). "[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand Cty.,* 119 F.3d 862, 866 (10th Cir.1997). Therefore, such claims "must be judged against the 'deliberate indifference to serious medical needs' test."

In the present case, Plaintiff has alleged that the State Defendants, in their individual capacities, failed to take reasonable steps to protect Brock and that his suicide was based on the failure of prison officials to provide medical care for those in custody. Plaintiff has alleged that each of the State Defendants, in their individual capacities, were deliberately indifferent to his medical and personal needs, and therefore they had been put on notice and violated those constitutional mandates.

## POINT VI

### Plaintiff has adequately alleged facts that state a viable sixth claim for relief under the Utah Constitution Article I, Section 9 Unnecessary Rigor Clause.

While plaintiffs acknowledge that this Court has already dismissed the DCFS defendants FTC and Cottle stating that the Amended Complaint did not make adequate factual allegations, the remaining defendants have numerous unnecessary rigors claims against them in the Amended

---

[58] Motion for Judgment on Pleadings page 22.

Complaint. The DCFS Defendants are in a different situation than the State Defendants and that the DCFS allegations occurred long before Brock was incarcerated at the prison, and therefore those Defendants would not have any control over the actions of the State Defendants.

With regards to the State Defendants, the Plaintiff has made specific and detailed allegations. First, the "Plaintiff incorporate[ed] by reference each and every allegation contained in [all] of the proceeding paragraphs" of the Amended Complaint in ¶ 157 of the Amended Complaint. The complaint then goes on to claim that "existing remedies are not redressed Brock's injuries because there are no comparable remedies under the state, or statutory law and because the protections of article 1 section 9 of the Utah Constitution are broader than those of the United States Constitution."[59]

In *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist*., 2000 UT 87, ¶ 23, 16 P.3d 533, 538, the Court required three elements be alleged to proceed for in an Unnecessary Rigor claim. "First, a plaintiff must establish that he or she suffered a "flagrant" violation of his or her constitutional rights." (*Id. at 538*). "Second, a plaintiff must establish that existing remedies do not redress his or her injuries. (*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist*., 2000 UT 87, ¶ 24, 16 P.3d 533, 538), and "Third, a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist*., 2000 UT 87, ¶ 25, 16 P.3d 533, 539.

Regarding the first element, that the "plaintiff established a flagrant violation of his constitutional rights", the Plaintiff has set forth significant flagrant violations of his rights which included the pain and suffering of solitary confinement, emotional abuse of solitary confinement,

---

[59] Amended Complaint paragraph 162.

and the ultimate death as a result of the treatment by the Defendants. The Plaintiff alleges that the "CUCF Defendants perpetrated, encouraged and/or approved of the acts and omissions alleged herein and knew that such conduct was unjustified and was in violation of Brock's constitutional rights"… and the acts and omissions of the CUCF and Defendants were the direct and proximate cause the death of Brock in that the CUCF Defendants caused, and failed to prevent, the occurrence of constitutional violations suffered by Brock.[60] There seems to be no more flagrant violation of a constitutional right than cruelly implementing solitary confinement to a suicidal and mentally deficient individual and allowing that individual to be treated in direct contravention of the Defendants own doctor's recommendations. As set forth in more detail in Point I above Warden Bigelow had a duty to protect Brock Tucker and failed to do so in flagrant violation (deliberate indifference) of his constitutional rights.

Likewise, with regards to Dr. Garden, he was responsible for the mental and physical health treatment of Brock Tucker, and with deliberate indifference failed to ensure that he had adequate treatment of that the policy of punishment and the prison did not violate his constitutional rights. Plaintiffs have alleged "At all relevant times, Defendant Bigelow was responsible for the hiring and training of staff, and for the creation and oversight of policies, practices and customs regarding the mental health treatment of inmates, the disciplinary process, and the use of solitary confinement at CUCF during the period of time Brock was incarcerated at that facility.".[61] Despite Defendants claim, Warden Bigelow was responsible for the CUCF facility and despite defendants claim that Warden Bigelow had no personal knowledge or interaction with [Brock] Tucker[62], there is no evidence to that effect and Plaintiff has in fact alleged that Bigelow was aware that CUCF subjected inmates, including Brock, to extremely

---

[60] Amended Complaint paragraphs 73- 77.
[61] Amended Complaint paragraph 8.
[62] Motion for Judgment on Pleadings pg. 10.

disproportionate punishments, and repeated use of solitary confinement, and inflicted emotional distress, loneliness, and failed to treat mentally ill inmates.[63] Furthermore, Plaintiff alleges that CUCF policy regarding outpatient care disciplinary actions was in effect during the relevant period of time, and Warden Bigelow was the one responsible for that procedure to implement and see that it was carried out.[64]

With regards to Defendant Taylor, the Amended Complaint alleges the prison doctor notified the inmate disciplinary hearing officer pursuant to that procedure and that Brock had a mental illness with suicidal ideations. It is further alleged that Officer Taylor (IDHO) received these notices. Despite this knowledge, the Amended Complaint alleges Defendant Taylor failed to do his duty of following up on this matter and allowed the punitive isolation to occur on numerous occasions including the last one in which Brock committed suicide.[65] A more detailed description of the deliberate indifference and flagrant violations is contained in Point II above and will be referred to and incorporated by reference.

With regards to Defendant Cox, plaintiff alleges "Defendant Cox knew and should have known, that Brock had a long history of severe mental health conditions including brain damage, unspecified psychosis, and major depressive disorder; that Brock was under treatment for these conditions; and that prolonged periods of isolation tortured Brock and would cause or exacerbate severe mental illness, mental anguish, helplessness, depression, anxiety, insanity, and suicidal tendencies."[66] Furthermore, Plaintiff states that "[o]n the day of Brock's death Defendant Cox should have known and did know that Brock was a significantly increased suicide risk."[67] Plaintiff further alleges that with deliberate indifference, Defendant Cox entered Brock's cell

---

[63] Amended Complaint paragraph 8.
[64] Amended Complaint paragraphs 65-67
[65] Amended Complaint paragraph 102-108.
[66] Amended Complaint paragraph 114.
[67] Amended Complaint parapgraph115.

alone and got into a verbal altercation with Brock, and refused to allow him out for the day.

Plaintiff also alleges that Defendant Cox, again acting with deliberate indifference, failed to

monitor Brock to prevent his suicide even when put on notice of the possibility of a suicide

attempt when Brock hung a towel over the window of his cell prior his suicide."[68] A more

detailed description of the deliberate indifference and flagrant violations is contained in Point II

above, and will be referred to and incorporated by reference.

With regards to the defendant Utah Department of Corrections, the Amended Complaint

states,

> Defendant Utah Department of Corrections ("UDC") is a political subdivision of
> the State of Utah and is a recipient of federal funds. At all relevant times: UDC
> was responsible for the creation and oversight of programs, services, activities,
> policies, practices, and customs of the state's prisons, including the mental health
> treatment of inmates, disciplinary processes, and general confinement practices;
> UDC was also responsible for administering, supervising and training employees
> and contractors who attended to inmates with medical and mental health
> problems; and UDC operated the Central Utah Correctional Facility ("CUCF"), a
> public facility with programs and services for which Brock Turner was otherwise
> qualified.[69]

The Amended Complaint provides, "UDC's employees and/or agents reviewed Brock's

personal and medical history. UDC "knew that Brock had brain damage, a low IQ, impulse

control disorder, unspecified psychosis, and major depressive disorder. UDC knew these mental

impairments substantially limited Brock's major life activities, including his abilities to care for

himself, learn, concentrate, work, and think. Brock had previously attempted suicide, and UDC

knew he presented a serious risk of suicide while incarcerated."[70]

The Amended Complaint goes on to allege, "Despite this knowledge, UDC excluded

Brock from, and denied him participation in, its programs, services, and activities, and

---

[68] Amended Complaint paragraph 117.
[69] Amended Complaint paragraph 7.
[70] Amended Complaint paragraph 153.

discriminated against Brock because of his disability by failing to make reasonable accommodations for him to be able to take his medications as prescribed, disciplining him for his disability-related behavior, housing him in conditions that endangered him – locking him in a solitary cell with an obvious tie-off point and a hanging implement – and, finally, failing to carefully monitor him or equip its staff with training, polices, or procedures to make the accommodations needed to keep Brock safe."[71]

The second element requires "a plaintiff must establish that existing remedies do not redress his or her injuries. (*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 24, 16 P.3d 533, 538), the fact that a State Entity is immune from suit under a Section 1983 action would demonstrate that the existing remedies against the Utah Department of Corrections do not allow for the redress of Brock's injuries. While the Americans with disability act allows limited remedies, the allowed remedies against the Department of Correction are significantly impacted and limited.

Finally, the third element requires "a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 25, 16 P.3d 533, 539. It is undisputed that an injunction at this point would be useless, since Brock Tucker has already died at the hands of the Defendants, so injunctive relief is totally ineffective.

**CONCLUSION**

Based upon the foregoing, the Plaintiff acknowledges that case law on a section 1983 action grants immunity to the Defendants in their official capacities via the 11th Amendment. The

---

[71] Amended Complaint paragraph 154.

Plaintiff, however, needs to ensure that the State Defendants cannot now claim they were acting in their official capacity and thus somehow attempt to escape personal liability. With regards to the Americans with Disability Act, the Plaintiff has alleged more than sufficient facts and law to establish liability against the Department of Corrections and the individual State Defendants as well. Finally, with regards to the unnecessary rigor claim, the plaintiffs have alleged adequate facts, legally supported liability, and are entitled to proceed on with their claim against the Defendants.

DATED this 24th day of December 2018

**RANDALL W. RICHARDS**

/s/: Randall W. Richards

RANDALL W. RICHARDS, *Attorney for Plaintiff*

**EMILY A. SWENSON PC**

/s/: Emily A. Swenson

EMILY A. SWENSON, *Attorney for Plaintiff*