MEB W. ANDERSON (10227)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Email: mebanderson@agutah.gov

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE STATE OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| JANET CRANE, as Administrator of the Estate of Brock Tucker.<br><br>Plaintiff,<br><br>v.<br><br>UTAH DEPT. OF CORRECTIONS, *et al*.,<br><br>Defendants. | **REPLY IN SUPPORT OF THE STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:16-cv-1103-DN<br><br>Judge David Nuffer |

The State Defendants hereby submit this Reply in Support of their Motion for Judgment on the Pleadings.[1] A party may move for judgment on the pleadings any time "[a]fter the pleadings are closed--but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c).

To survive judgment on the pleadings, Plaintiff must allege "a claim to relief that is plausible on its face."[2] To determine whether the claim to relief is "plausible on its face," the Court must examine the elements of the particular claim and review whether the plaintiff has

---

[1] Plaintiff has "capitulated" that Brent Platt, and Susan Burke, can be dismissed from this matter with prejudice. (Docket No. 80, at page 23 of 34).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

pleaded "**factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] Though the Court should construe factual allegations as true, the Court should refuse to accept mere labels and legal conclusions as true.[4]

Here, Plaintiff has submitted speculative conclusions but has failed to point to "factual content" regarding what the State Defendants did. Plaintiff's allegations do not permit the court to infer more than the mere possibility of misconduct and has not shown that the Plaintiff is entitled to relief. This is especially so where the State Defendants have asserted a qualified immunity defense.[5] Put simply, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."[6]

Plaintiff claims that the State Defendants "ignore the vast majority of the 166 numbered allegations contained in the 38 pages of the Plaintiffs 43 page Amended Complaint."[7] But these conclusory allegations do not state plausible factual content against the State Defendants. (Docket No. 73). And the State Defendants are entitled to qualified immunity even if the allegations of the Amended Complaint are taken as true.[8]

**I. Claims against Warden Bigelow and Dr. Garden fail as a matter of law.**

Plaintiff generically claims that "Defendant Bigelow was responsible for the hiring and training of staff, and for the creation and oversight of policies, practices and customs regarding the mental health treatment of inmates, the disciplinary process, and the use of solitary

---

[3] *Id.* (emphasis added).
[4] *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).
[6] *Id.* at 686.
[7] (Docket No. 80, at page 3 of 34).
[8] (Docket No. 73, at note 7, page 8 of 25).

confinement at CUCF during the period of time Brock was incarcerated at that facility."[9] Plaintiff also claims "Bigelow was aware that CUCF subjected inmates, including Brock, to extremely disproportional punishments and repeated use of solitary confinement depriving them of human dignity, sanity, and inflicted emotional distress, loneliness and failed to treat mentally ill inmates."[10] These are conclusory allegations that lack any affirmative link.

And allegedly the "CUCF defendants, including Warden Bigelow oversaw that facility and knew of his mental health diagnosis and his grievances yet failed to act in any reasonable way to remedy these issues."[11] As support for this conclusory statement, Plaintiff cites to paragraphs 43-64 of the Amended Complaint, which is discussing Tucker's valid sentences to solitary confinement. These facts were repeated in the State Defendants' Motion.[12] Many of the facts in the Amended Complaint at paragraphs 43-64 do not address relevant factual content.[13] Warden Bigelow's name is not mentioned once in any of these allegations.

As to Dr. Garden, Plaintiff claims that "Garden was responsible for the oversight and control over the policies and procedures for medical and mental health treatment at CUCF." (Docket No. 80, at page 9 of 34).[14] Similar to Warden Bigelow, Plaintiff claims that Dr. Garden "was aware that CUCF subjected inmates including [Tucker] to extremely disproportionate of

[9] (Docket No. 89, at page 6 of 34, citing to Docket No. 39, at ¶ 8).
[10] (Docket No. 89, at page 6 of 34).
[11] (Docket No. 89, at page 8 of 34).
[12] (Docket No. 73, at pages 5-7 of 25).
[13] *See* (Docket No. 39, at ¶¶ 54, 55, 59, 60, 61, 62, 63).
[14] "Although Dr. Garden did not personally participate in Mr. [Tucker]'s care, Mr. [Tucker's Estate] contends that Dr. Garden failed to supervise his employees. A necessary component of a failure-to-supervise claim, however, is an underlying constitutional violation." *Jensen v. Garden*, No. 18-4048, 2018 WL 5099601, at *5 (10th Cir. Oct. 19, 2018).

punishments and repeated use of solitary confinement, and inflicted emotional distress loneliness and failed to treat his mentally ill inmates."[15] Paragraph 11 in the Amended Complaint deals with Officer Cox, not Dr. Garden. Paragraph 9 of the Amended Complaint is one of the few instances, where Dr. Garden's name even appears. Nothing in paragraph 9 states a claim.

Plaintiff cites to a number of treatises and irrelevant recitations in an attempt to tie Dr. Garden and Warden Bigelow to a national trend of inmate suicides.[16] These facts are irrelevant to the question of whether any State Defendant was deliberately indifferent to a known risk that Tucker would commit suicide. The Amended Complaint is replete with this type of conclusory content that the *Iqbal* court warns against.

Plaintiff claims that paragraphs 88, 89, 90, 91, 92, 94, 95, and 96 of the Amended Complaint allege factual content against Dr. Garden.[17] These paragraphs are again full of conclusions, speculation, and labels. Plaintiff generically claim that the State Defendants' failed to provide Tucker with medical or psychiatric care.[18] But it is alleged in the Amended Complaint that Tucker was receiving treatment for his mental health issues, which directly contradicts the claims now made in the Plaintiff's Opposition that Dr. Garden was not treating "his mentally ill inmates."

In the Amended Complaint, the following allegations are made:

- In June 2014, Tucker was seen by Dr. Burnham for medical and mental illnesses and was diagnosed with unspecified psychosis and major depressive disorder, along with moderate back pain and hepatitis C. (Docket No. 39, at ¶ 53; Docket No. 73, at ¶ 31).

- On June 19, 2014, Tucker was prescribed anti-depressant and anxiety medication to

[15] (Docket No. 80, at page 9 of 34, citing to Docket No. 39, at ¶ 11).
[16] (Docket No. 80, at page 12 of 34).
[17] (Docket No. 80, at pages 13-15 of 34, citing to Docket No. 39).
[18] (Docket No. 39, at ¶ 94).

treat major depressive disorder. (Docket No. 39, at ¶ 56; Docket No. 73, at ¶ 32).

- On July 2, 2014, Dr. Bruce Burnham (who is a UDOC physician) ordered Tucker to outpatient mental health treatment. (Docket No. 39, at ¶ 57; Docket No. 73, at ¶ 33).

- On July 16, 2014, Tucker was prescribed additional medication to address major depressive disorder. (Docket No. 39, at ¶ 58, Docket No. 73, at ¶ 34).

It cannot be disputed that Tucker was being treated. Simply treating an inmate for mental health issues, as was done here, is not evidence of a "known risk" that suicide is imminent.[19] Thus, the deliberate indifference claim against Warden Bigelow and Dr. Garden is not plausible. But, even if a plausible allegation is plead, there was no deliberate indifference as a matter of law.

**II. IDHO Taylor was not deliberately indifferent.**

Taylor sentenced Tucker to punitive isolation for a variety of admitted disciplinary issues. The State Defendants are not aware of any case that has ever held a hearing officer is a proper defendant in an Eighth Amendment claim of deliberate indifference to known risk of suicide. Hearing officers are not medical personnel.

Plaintiff claims without any legal support that the allegations regarding valid sentences of solitary confinement somehow constitute deliberate indifference to a known risk of suicide. Plaintiff cites to no case for support. To the contrary, numerous cases have held that solitary confinement is an incident of ordinary prison life. There is no dispute that Tucker was validly sentenced to punitive isolation for behavioral issues. Taylor cannot ignore his conduct. And Tucker was being treated for any medical or mental health issues, and he was allowed to live in

---

[19] Plaintiff claims that "In the case at bar however, plaintiff alleges that there had been numerous evaluations of Tucker, and the risk of suicide and other mental health issues was clearly identified and obvious." (Docket No. 80, at page 23 of 34). This conclusory allegation is not supported by the Tenth Circuit and Supreme Court case law that clearly governs this matter.

general population if he followed the rules. It is quite common for inmates with mental health issues to live in both general population and punitive isolation.[20] In prison when the rules are not followed, society and the courts allow corrective action. Thus, the moniker and name the "Utah Department of Corrections."[21]

Being seen for a mental health concern does not give an inmate a free pass to violate the rules of prison.[22] No case has ever held as such. There is no evidence that any State Defendant, and specifically IDHO Taylor, ignored a known risk that Tucker would commit suicide. Plaintiff has not alleged factual content to this end. IDHO Taylor had no knowledge that a sentence of punitive isolation would constitute a "known risk" that Tucker would commit suicide. There is no allegation that IDHO Taylor did not consider Tucker's mental health as he imposed discipline. The allegations in the Amended Complaint relating to IDHO Taylor and a "known risk" of suicide are complete speculation and conjecture. No specific factual content is alleged.

Rather Plaintiff's Amended Complaint claims: "At the time Brock was held in punitive isolation, it was widely known, across the nation and around the world, that holding a person in solitary confinement can be expected to cause, or seriously exacerbate, mental illness, deep

[20] *Cf. Estate of Vallina v. Cty. of Teller Sheriff's Office*, No. 17-1361, 2018 WL 6331595, at *1 (10th Cir. Dec. 4, 2018) (inmate with known mental health issues, and prior suicide attempts, cleared for placement in general population at TCDC); with *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 758 (10th Cir. 2014) (thirty years of solitary confinement were not the cause of mental symptoms of anxiety, depression, memory loss, and cognitive impairment).

[21] The primary purpose of incarceration is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment. *See* 18 U.S.C. § 3553.

[22] In the *Silverstein* case the Tenth Circuit did not equate thirty years in punitive isolation with any link or cause to the inmate's mental health issues. "[W]e cannot conclude his current mental symptoms of anxiety, depression, memory loss, and cognitive impairment are caused by the conditions of his current segregated confinement[.]" *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 758 (10th Cir. 2014).

depression, crushing loneliness and the risk of suicide."[23] They continue, "CUCF Defendants knew that, as a result of being placed in isolation, there was a strong likelihood that Brock was in danger of serious personal harm, including self-harm and suicide."[24] These allegations are speculation and conjecture. These are Plaintiff's opinions and are contrary to Tenth Circuit case law recognizing that administrative segregation (individual cell housing) is often utilized for inmate safety, and that punitive isolation is constitutional.

Plaintiff attempts to draw an inference that IDHO Taylor is constitutionally liable because there is a UDOC Policy that "when disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness."[25] There are contradictory allegations regarding whether this policy was followed. Regardless, even if the policy was ignored and violated it does not amount to a constitutional violation.[26] "The Supreme Court has held that simply failing to follow jail policies is not a constitutional violation in and of itself."[27]

Plaintiff also claims that IDHO Taylor had a duty to follow up on whether or not Tucker's mental health issues were the cause of his discipline issues.[28] But Taylor is not a medical professional, and the sentences he had invoked prior to the day Tucker committed

---

[23] (Docket No. 39, at ¶ 66).
[24] (Docket No. 39, at ¶ 90).
[25] (Docket No. 80, at page 17 of 34).
[26] Even if IDHO Taylor "had been aware of Mr. [Tucker]'s injury at that time, a failure to adhere to a policy or regulation (without more) does not equate to a constitutional violation." *Jensen v. Garden*, 2018 WL 5099601, at *5 (10th Cir. Oct. 19, 2018) (citing cases).
[27] *Ernst v. Creek Cty. Pub. Facilities Auth.*, 697 F. App'x 931, 934 (10th Cir. 2017).
[28] (Docket No. 80, at page 17 of 34).

suicide may be challenged through an IDHO appeal, or a writ of habeas corpus, which Tucker apparently never did. The fact that Tucker committed suicide while in punitive isolation does not mean it was deliberate indifference to sentence him to punitive isolation. There is no case law that suggests it was or that a hearing officer has any follow-up duties.

**III. Officer Cox was not deliberately indifferent.**

There are no specific allegations that indicate that Officer Cox deliberately ignored a known risk of suicide. Undeterred by the overwhelming case law directly on point, Plaintiff claims that "on the day of Brock's death defendant Cox should have known, and did not know that Brock was a significantly increased suicide risk."[29] Again, this speculative conclusion is not supported by factual content. And case law repeatedly indicates that prison life allows for many ordinary incidents of prison life, including verbal altercations, covering of cell windows, etc. and these rather routine actions do not put officers on notice of a known risk of suicide.

Plaintiff claims that a verbal altercation with Officer Cox was evidence of a "known risk" that Tucker would commit suicide. But, the Tenth Circuit has been expressly clear that a verbal exchange with a guard, even if it triggers a "psychotic episode" is not a constitutional violation.[30] Plaintiff also claims that Tucker had placed a towel over his window, and that Officer Cox should have seen this, and apparently drawn the inference that this signaled a "known risk" that Tucker would commit suicide. Plaintiff claims this was a "clear indication that Brock was going to harm himself."[31] But there is no indication that Officer Cox noticed the towel, and the Tenth

---

[29] (Docket No. 80, at page 17 of 34).

[30] *Graham v. Van Der Veur*, 986 F.2d 1427 (10th Cir. 1992) ("a mere claim of verbal harassment does not state a violation of any right within the meaning of § 1983.").

[31] (Docket No. 39, at ¶ 71).

Circuit has held on similar facts that the failure to recognize a sheet over a window of an inmate who found hanging dead in her cell was not deliberate indifference.[32] There are many reasons inmates cover their cell windows and doing so is not a clear indication of harm. These arguments were materially addressed in the State Defendants' Motion.

These few specific facts, even when considered in total, do not come close to evidencing deliberate indifference to a known risk of suicide. These facts are only evidence of ordinary incidents of prison life. These concepts are repeated throughout the case law cited in the State Defendants' Motion and this Reply. As additional support, in *Ernst v. Creek Cty. Pub. Facilities Auth*., 697 F. App'x 931, 932 (10th Cir. 2017), "[a] few days after being sentenced to thirty-six years in prison, Ernst hanged himself in the jail's bathroom. Ernst had been evaluated for suicidal thoughts several times while at the jail, but was not on suicide watch when he took his own life." This clearly shows that just because an inmate is evaluated for mental health concerns, they do not have to be on suicide watch or a known risk of suicide.

In *Ernst*, his family had contacted the jail and stated that Ernst needed mental health treatment, another inmate had notified the jail that Ernst appeared suicidal, and the sheriff's deputy that transported Ernst back to the jail after his sentencing informed the jail that Ernst needed to be put on suicide watch "because Ernst had said that he wanted to be run over by the Deputy's vehicle."[33] Despite all of this, an LPN at the jail determined that Ernst did not appear suicidal. Five days later Ernst hanged himself in a shower stall. The Tenth Circuit held "[i]t is not enough for an official to merely be aware of facts from which the inference could be drawn

---

32 *Norman v. Randolph*, 597 F. App'x 988, 990 (10th Cir. 2015).
33 *Ernst v. Creek Cty. Pub. Facilities Auth*., 697 F. App'x 931, 931-32 (10th Cir. 2017),

that a substantial risk of serious harm exists; rather, the official must also draw the inference."[34] Here, there is no evidence that Officer Cox was aware of the substantial risk of suicide, let alone any plausible allegation that he drew that inference.

Another Tenth Circuit prison suicide case has also been decided since the State Defendants filed their motion. There, the inmate came into the prison on June 5, 2014, as a known suicide risk and was known to have attempted suicide before. He was cleared for general population, where he committed suicide.[35] "A prison official does not act recklessly or with deliberate indifference by failing to act to avert the suicide of a detainee who displays no outward indicators of suicidal ideation[.]"[36] There are no allegations that Tucker was displaying outward indicators of suicidal ideation. There is no case law that indicates that facts as those alleged here constitute notice of a known risk of suicide. In fact, the cases indicate there was no clearly established constitutional violation here.

**IV. There was no violation of the Americans with Disabilities Act (ADA).**

In researching for this Reply, the State Defendants discovered the following holding from a District of Utah case: "ADA claims do not survive a plaintiff's death under Utah's survival statute."[37] Tucker's ADA claim does not survive his death. This ends the ADA matter.

**V. The law is not clearly established.**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[34] *Id*. at 933-34.
[35] *Estate of Vallina v. Cty. of Teller*, 2018 WL 6331595, at *1 (10th Cir. Dec. 4, 2018).
[36] *Id*. at *3.
[37] *Allred v. Solaray, Inc.*, 971 F. Supp. 1394, 1398 (D. Utah 1997).

rights of which a reasonable person would have known."[38] Thus, even if the Court feels the State Defendants' conduct was arguably unconstitutional, the Court can dismiss the matter if the case law on point would not have indicated to the State Defendants that the actions they took did not amount to a clearly established constitutional violation. Here, no State Defendant committed a clearly established constitutional violation.

**VI. There was no unnecessary rigor.**

Plaintiff claims "[t]here seems to be no more flagrant violation of a constitutional right than cruelly implementing solitary confinement to a suicidal and mentally deficient individual and allowing that individual to be treated in direct contravention of the Defendants own doctor's recommendations."[39] But there is no allegation anywhere in the Amended Complaint that a doctor recommended where to house, or not house, Tucker. This is Plaintiff's speculative hypothesis based on national literature. Hypothetical, speculative, and conjectural allegations are not plausible. There is no factual content that alleges unnecessary rigor.

For each of these reasons, and the reason argued in the State Defendants' Motion, Plaintiff's First Amended Complaint should be dismissed with prejudice.

DATED this 11th day of January 2019.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Meb W. Anderson
MEB W. ANDERSON
Assistant Utah Attorney General
Attorney for the State Defendants

[38] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[39] (Docket No. 80, at page 30 of 34).