IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JANET CRANE, as Administrator of Brock Tucker's Estate,<br><br>Plaintiff,<br><br>v.<br><br>UTAH DEP'T OF CORR. et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING MOTION FOR JUDGMENT ON PLEADINGS**<br><br><br>Case No. 2:16-CV-1103-DN<br><br>District Judge David Nuffer |

Inmate Brock Tucker committed suicide while at Central Utah Correctional Facility (CUCF). (ECF No. 39, at 2.) Plaintiff, his grandmother, brings this action on his estate's behalf. (*Id*.)

Plaintiff's Amended Complaint, (ECF No. 39), asserts these causes of action: (1) Under § 1983,[1] cruel-and-unusual-punishment claims against CUCF Defendants Bigelow, Garden, Taylor, and Cox, U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); (2) deliberate-indifference claims against Utah Department of Child and Family Services (DCFS) Defendants Platt, Burke, Futures Through Choices (FTC), Universal Health Services (UHS), and Jeremy Cottle, U.S. Const. amend. XIV; (3) Americans with Disabilities Act (ADA) and Rehabilitation Act (Rehab Act)

---

[1] The statute reads in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.S. § 1983 (2019).

claims against Defendant Utah Department of Corrections (UDOC), 29 U.S.C.S. § 794 (2019); 42 *id*. § 12101; (4) unnecessary-rigor claims against all defendants. Utah Const. art. I, § 9.

On September 28, 2017, Defendants FTC and Cottle were dismissed from this case. (ECF No. 58, at 8.)

On November 4, 2018, the remaining defendants moved for judgment on the pleadings. (ECF No. 73.) On November 5, 2018, a motion hearing was held, with the motion for judgment on pleadings taken under advisement. (ECF No. 74.)

On December 26, 2018, Plaintiff filed Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings. (ECF No. 80.) In that memorandum, Plaintiff conceded, "Plaintiff has failed to allege a viable . . . claim under the Fourteenth amendment against DCFS Director Platt and Juvenile Justice [Director] Burke." (*Id*. at 23.) Plaintiff did not mention UHS, nor make any further argument as to Plaintiff's Fourteenth Amendment claim. Then, in the first paragraph of Plaintiff's argument about unnecessary-rigor claims under the Utah Constitution, Plaintiff acknowledged past dismissal of Defendants FTC and Cottle and recognized, "The DCFS Defendants are in a different situation than the State Defendants and . . . the DCFS allegations occurred long before Brock was incarcerated at the prison, and therefore those Defendants would not have any control over the actions of the State Defendants." (*Id*. at 28-29.) Plaintiff did not again mention any of the remaining DCFS defendants in unnecessary-rigor arguments. Therefore, it appears that there are no further claims against remaining DCFS Defendants Platt, Burke, and UHS. Those defendants are thus dismissed from this case without further consideration.

That said, the remaining claims are: (1) cruel and unusual punishment alleged against Defendants (a) Bigelow (supervisor liability); (b) Garden (supervisor liability); (c) Taylor (punishments of segregated confinement); and (d) Cox (verbal altercation and denial of recreation on day of suicide); (2) violation of ADA and Rehab Act against UDOC; and (3) unnecessary rigor against Bigelow, Garden, Taylor, and Cox (CUCF Defendants) and UDOC.

## I. MOTION-TO-DISMISS STANDARD OF REVIEW

> "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *accord Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002). . . .
> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, we "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

*Cummings v Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019).

## II. RELEVANT FACTS ACCEPTED AS TRUE ONLY FOR THIS ORDER'S PURPOSES

1. At relevant time, Tucker was inmate at CUCF. (ECF No. 39, at 2.)

2. Plaintiff Janet Crane is administrator of Tucker's estate. (*Id*. at 3.)

3. UDOC is State of Utah political subdivision. (*Id*.)

4. Defendant Bigelow, sued in individual capacity, was warden of CUCF from about 2007 to July 2010 and April 2014 to February 10, 2017. (*Id*. at 4.)

5. At relevant times, Defendant Garden, sued in individual capacity, was UDOC Director of Clinical Services Bureau, managing medical and mental-health treatment of CUCF inmates. (*Id*. at 4-5.)

6. At relevant times, Inmate Taylor, sued in individual capacity, was CUCF inmate disciplinary officer. (*Id*. at 5.)

7. At relevant times, Defendant Cox, sued in individual capacity, was CUCF correctional officer. (*Id*.)

8. On September 5, 2012, Tucker entered Utah State Prison and, within months, transferred to CUCF. (ECF No. 73, at 5.) Amended Complaint contains no allegation of Tucker's prior medical or mental-health information being put on prison records.

9. From February 2013 to February 2014, Tucker spent about 42% of his time--more than 154 days--in punitive isolation. (ECF No. 39, at 13.) "Punitive isolation" is described as follows: completely alone in cell; allowed out about 1 hour every other day, which was only time to shower; and denied recreation, library, visitation, phone calls, and commissary. (*Id*. at 12-13.)

10. On June 9, 2014, Tucker's inmate classification was changed from level 3 to level 2, meaning he was housed in maximum security and kept in his cell 21 hours per day, with reduced visitation and other privileges. (*Id*. at 14.) Around same time, Dr. Burnham diagnosed Tucker with unspecified psychosis and major depressive disorder and ordered treatment. (*Id*. at 14-15.)

11. From June 19 to September 12, 2014, Tucker was provided psychiatric drugs, "outpatient mental health treatment," "self-help programs," "frequent[] correspond[ence] with his family," and a meeting with a social worker. (*Id*. at 15-16.)

12. On September 19, 2014, Defendant Taylor disciplined Tucker for misbehavior with 2 20-day terms of punitive isolation, scheduled to be served September 19-October 9, 2014, and October 11-31, 2014. (*Id*. at 16-17.) CUCF policy "FD18/12.03" reads: "<u>Procedure: Outpatient Care Disciplinary Action</u> When disciplinary action is being considered for an offender in outpatient treatment, the psychiatrist mental health staff shall provide information to the discipline hearing officer stating whether or not the behavior was due to mental illness." (*Id*. at 17.) This procedure was not followed for discipline given Tucker by Defendant Taylor on September 19, 2014. (*Id*.)

13. On September 22, 2014, Tucker given new disciplinary notices for misbehavior. (*Id*. at 17.)

14. On October 2, 2014 afternoon, Defendant Cox argued with Tucker through cell door, refused out-of-cell recreation, was later seen entering Tucker's cell, and ignored towel over

4

Tucker's window. (*Id*. at 18.) At 6:15PM, unnamed officer discovered Tucker hanging from top bunk, dead. (*Id*.) Tucker's cell contained bunk bed, sheets, and towel. (ECF No. 73, at 7.)

## III. ANALYSIS

### A. CRUEL-AND-UNUSUAL-PUNISHMENT CLAIMS

Invoking the Eighth Amendment, Plaintiff argues that CUCF Defendants' deliberate indifference caused Tucker's suicide, triggering liability for damages payable by Defendants to his estate. (ECF No. 39.) Defendants, sued in their individual or personal capacities, counter that they are shielded from any liability here by qualified immunity. (ECF No. 73.)

The qualified-immunity defense "is available only in suits against officials sued in their personal capacities, not in suits against . . . officials sued in their official capacities." *Starkey v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009).

> The qualified-immunity doctrine protects public employees from both liability and "from the burdens of litigation" arising from their exercise of discretion. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013); *see Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982))). When a defendant raises the qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" *at the time of the challenged conduct.*'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *accord Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013).
> 
> We may address the two prongs of the qualified-immunity analysis in either order: "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 2151 (2017). . . .

5

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Ordinarily, "[a] plaintiff may satisfy this [clearly-established-law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision [that establishes the unlawfulness of the defendant's conduct]; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn*, 780 F.3d at 1005 (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)); *accord A.M.*, 830 F.3d at 1135; *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). As the Supreme Court has instructed, this "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question [regarding the illegality of the defendant's conduct] beyond debate." *al-Kidd*, 563 U.S. at 741; *see Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the 'plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000))). In this vein, the Court has "repeatedly told [lower] courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742 (citation omitted); *accord Mullenix*, 136 S. Ct. at 308. "[D]oing so avoids the crucial question [of] whether the official acted reasonably in the *particular* circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added); *accord Estate of B.I.C.*, 761 F.3d at 1106. In this connection, it bears underscoring that the federal right allegedly violated must have been "clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

In furthering the protective aims of qualified immunity, it is important that courts be especially sensitive to the need to ensure "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Estate of B.I.C.*, 761 F.3d at 1106 (quoting *Trotter*, 219 F.3d at 1184)).

*Cummings v Dean*, 913 F.3d 1227, 1239-41 (10th Cir. 2019).

> "[B]y asserting the qualified-immunity defense, [Defendants Bigelow, Garden, Taylor and Cox] triggered a well-settled twofold burden that [Plaintiff] was compelled to shoulder: not only did she need to rebut [Defendants'] no-constitutional-violation arguments, but she also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law. *See, e.g., Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("When a defendant asserts qualified immunity . . . , the burden shifts to the *plaintiff*, who must clear *two hurdles* in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, *and* that the right was clearly established at the time of the alleged unlawful activity." (emphases added)); *see also Felders v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))), *cert. denied.*, 135 S. Ct. 975; *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) ("Unless the plaintiff carries its twofold burden, the defendant prevails.").

*Cox*, 800 F.3d at 1245.

The second prong is dispositive: Plaintiff has not carried her burden of showing that the allegedly violated constitutional right was clearly established at the time of the purported unlawful activity. *Id*. at 1246 (stating court has "discretion to address either prong [of this standard] first" (alteration in original)). Plaintiff argues only two cases as on-point Supreme Court and published Tenth Circuit law putting the unlawfulness of CUCF Defendants' conduct beyond debate: *Taylor v. Barkes*, 135 S. Ct. 2042 (2015), and *Cox*, 800 F.3d 1231.

In *Taylor*, an inmate was medically evaluated as he entered prison. 135 S. Ct. at 2043. The evaluation included screening for suicide-risk factors. *Id*. Though he disclosed his history of psychiatric treatment, medication, and suicide attempt, lack of other indicators--e.g., current suicidal thoughts--resulted in routine referral to mental-health services. *Id*. However, the next day, he hung himself. *Id*. When the inmate's family sued prison officials on his behalf and

defendants asserted qualified immunity, the Supreme Court held for defendants: "No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols." *Id*. at 2044.

Thus, the *Taylor* case would not have put CUCF Defendants on notice that they should screen for suicide risk or adopt a suicide-prevention protocol--let alone when there is no allegation that CUCF Defendants personally knew of Tucker's psychiatric history or even Dr. Burnham's recent diagnosis of psychosis and depressive disorder.

And, in *Cox*, the inmate underwent a mental-health screening when he entered jail. 800 F.3d at 1237. Though the inmate answered, "Yes," to questions that the protocol indicated should result in follow-up mental-health care, no referral was done. *Id*. The next day, the inmate filed a medical request to talk "to someone about problems" and possibly visited with a healthcare employee. *Id*. at 1238. Three days after intake, though, the inmate hung himself. *Id*. The inmate's mother acted on his behalf to sue the county sheriff under the Eighth Amendment. *Id*. at 1236. And defendant invoked qualified immunity. *Id*. The Tenth Circuit concluded, "[T]he right that [Plaintiff's] claim implicates--i.e., generally, an inmate's right to proper suicide screening procedures during booking--was not clearly established in July 2009." *Id*. at 1247.

Likewise, the *Cox* case would not have put CUCF Defendants on notice that they were violating a constitutional right of Tucker—for whom (based on the assumed facts put forth by Plaintiff) they never had any notice of mentally illness or suicidal inclination. Here, the right espoused by Plaintiff might be more accurately termed, "an inmate's right to not be argued with, or disciplined with occasional periods of administrative segregation, due to the possibility that he

8

may be suicidal." And Plaintiff has not suggested any on-point Supreme Court or published Tenth Circuit precedent to characterize this as a right of which Defendants may have been aware.

In sum, Plaintiff has not met her burden of showing CUCF Defendants violated Tucker's clearly established constitutional rights. CUCF Defendants are therefore protected by qualified immunity from further exposure on this claim.

### B. ADA AND REHAB ACT CLAIMS

"The elements for proving a violation of the ADA and [of] the Rehabilitation Act ("Rehab Act") are the same, except that an element of the Rehab Act is that the entity receives federal funding." *Solomon v. Pioneer Adult Rehab. Ctr.*, No. 1:04-CV-102 DAK, 2007 U.S. Dist. LEXIS 93878, *10 n.3 (D. Utah 2007). These claims are therefore discussed together. *Roe v. Housing Auth.*, 909 F. Supp. 814, 821 (D. Colo. 1995) ("[B]ased on the explicit intent of Congress and the similar goals of the ADA [and] the Rehab Act . . ., I will analyze the . . . ADA and Rehab Act claims together."); *see also Nordwall v. PHC-Las Cruces, Inc.*, 960 F. Supp. 2d 1200, 1233 (D.N.M. 2013) ("The remedies for ADA and Rehabilitation Act violations are co-extensive.").

"ADA claims do not survive a plaintiff's death under Utah's survival statute." *Allred v. Solaray*, 971 F. Supp. 1394, 1398 (D. Utah 1997); *see* Utah Code Ann. § 78B-3-107(1)(a) (2019). The analysis in *Allred* also fully supports an explicit conclusion here that co-extensive Rehab Act claims likewise do not survive a plaintiff's death under Utah's survival statute. Based on Tucker's death, ADA and Rehab Act claims may not proceed further and are dismissed.

# C. UNNECESSARY RIGOR

Plaintiff's last remaining claim derives from the Utah Constitution. Supplemental jurisdiction was exercised over the claim while the above federal claims were pending (that have now been dismissed).

> (a) Except as provided [below] . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .
> . . . .
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C.S. § 1367 (2019).

> "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d at 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Supreme Court has also recognized:
>
>> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.
>
> *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies. *See Armijo v. New Mexico*, No. CIV 08-0336, 2009 U.S. Dist. LEXIS 101917, 2009 WL 3672828, at *4

(D.N.M. Sept. 30, 2009) (Browning, J.) ("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it."). The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'" *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) (unpublished).

*Nordwall*, 960 F. Supp. 2d at 1247-48.

The Utah-Constitution-based unnecessary-rigor claim is therefore dismissed.

### IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss on the Pleadings is **GRANTED**. (ECF No. 73.) All Defendants and claims having now been dismissed, this action is **CLOSED**.

Dated February 4, 2020.

BY THE COURT:

_____
David Nuffer
United States District Judge